ROBERT ADDISON

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

| 193 | | 405 |
| 202 | 2 | 63 |
| 202 | 1 | 67 |

*Opinion filed December 18, 1901.*

1. CRIMINAL LAW—*proof of misconduct not connected with the charge is inadmissible.* Proof of misconduct of the accused not connected with the charge upon which he is being tried is ordinarily inadmissible, since such evidence is likely to prejudice the jury and cause them to lose sight of the issues which they have sworn to try.

2. SAME—*what prejudicial error in trial for assault with intent to commit rape.* It is prejudicial error to permit the People, in making their proof of an assault with intent to commit rape, to prove that the accused had been drinking beer on the day of the alleged assault, and had treated a boy, sixteen years old, to beer.

3. SAME—*force is not essential to crime of assault with intent to rape a female under fourteen.* Since, under the statute, carnal knowledge of a female under fourteen years of age, with or without her consent, is rape, the use of force is not an essential element of the crime of assault to commit rape on one under fourteen.

4. SAME—*when instruction as to duty of jurors to consult with each other is properly refused.* While it is the duty of jurors to consult with each other with a view to reaching the truth and agreeing upon a just verdict, yet it is proper to refuse an instruction telling the jury that in such consultation no juror should yield his deliberate, conscientious convictions at the instance of his fellow-jurors, nor surrender his honest convictions for the sake of unanimity or to avert a disagreement.

5. SAME—*accused not offering evidence of good reputation is not entitled to instruction on the subject.* If the accused does not attempt to put his good reputation in issue by the introduction of evidence on the subject, he is not entitled to an instruction telling the jury that the law presumes that he has a good character and reputation until the contrary is proven, and that they cannot consider the omission to prove the same as a circumstance against him, but must presume his reputation to be good without any proof on the subject, and take the same into consideration in making up their verdict.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. W. H. GEST, Judge, presiding.

McARTHUR & COOKE, for plaintiff in error:

An indictment charging the crime of an assault with intent to rape must aver the assault with intent, etc.,

and to sustain a conviction both elements must be established beyond a reasonable doubt. An instruction which informs the jury that the defendant may be found guilty of the crime charged if the defendant had the intent, omitting the element of assault, is erroneous and misleading. The crime consists of two elements: First, the assault; second, the intent to commit the felony; and both are indispensable to a conviction. *Preisker* v. *People,* 47 Ill. 382; *Barr* v. *People,* 113 id. 471; *Stevens* v. *People,* 158 id. 111; *Commonwealth* v. *Bean,* 137 Mass. 570; *State* v. *Smith,* 80 Mo. 516; *Hix* v. *People,* 157 Ill. 382; *Turley* v. *People,* 188 id. 628; *Stephens* v. *State,* 107 Ind. 185.

There can be no conviction of an assault with intent to rape without an assault. The major includes the minor offense. An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. Hurd's Stat. 1899, sec. 20, p. 564.

The statute which makes the consent of the female immaterial in defense of the carnal knowledge does not extend also to the charge of an assault with intent to rape. Bishop on Stat. Crimes, sec. 496; *Stephens* v. *State,* 107 Ind. 185; 1 Am. & Eng. Ency. of Law, 806, 807; *State* v. *Canada,* 68 Iowa, 397; *Brown* v. *State,* 27 Tex. App. 330.

If a person abandon his evil intention at any time before so much of the act is done as constitutes a crime, such abandonment takes from what has been done its indictable quality. 1 Bishop on Crim. Law, sec. 208*a,* 733; *Stephens* v. *State,* 107 Ind. 185.

The jury are not to consider the omission to prove good character and reputation as a circumstance against the defendant. The law presumes this, and the defendant was entitled to have the jury so instructed. *State* v. *Tozier,* 49 Me. 404; 1 Wharton on Crim. Law, sec. 637.

Evidence on behalf of the People, admitted over objection of defendant, tending to prove another separate and distinct criminal offense than the one charged in the indictment, viz., giving intoxicating liquor to a minor, is

not admissible, and the improper admission of this kind of evidence is prejudicial to the defendant, irrelevant, incompetent and erroneous. *Turley* v. *People*, 188 Ill. 633; *Janzen* v. *People*, 159 id. 440; Wharton on Crim. Evidence, sec. 30; *Baker* v. *People*, 105 Ill. 452; *Kribs* v. *People*, 82 id. 425; *Sutton* v. *Johnson*, 62 id. 209; 1 Bishop on Crim. Proc. sec. 1120; *Gifford* v. *People*, 87 Ill. 210.

Where the evidence is conflicting and the case close upon its facts no incompetent testimony or inaccurate instructions should be permitted to reach the jury. *Adams* v. *People*, 179 Ill. 633; *Stevens* v. *People*, 158 id. 111; *Chambers* v. *People*, 105 id. 409; *Miller* v. *People*, 90 id. 409; *Gifford* v. *People*, 148 id. 173; *Hroneck* v. *People*, 47 id. 382; *Austine* v. *People*, 51 id. 236; *Gifford* v. *People*, 87 id. 210; *Jacques* v. *People*, 66 id. 84; *State* v. *Canada*, 68 Iowa, 397; *Stephens* v. *State*, 107 Ind. 185.

H. J. HAMLIN, Attorney General, and WILLIAM J. GRAHAM, State's Attorney, for the People:

In any prosecution where premeditation or intent is a part of the crime charged, proof of the drunken condition of the accused at the time is admissible, as tending to show his mental status at the time. *Conn* v. *People*, 116 Ill. 462; Wharton on Crim. Law, sec. 51; *Upstone* v. *People*, 109 Ill. 175; *Bartholomew* v. *People*, 104 id. 606; *Rafferty* v. *People*, 66 id. 125; Bishop's New Crim. Law, sec. 413.

The cases upon this subject are well and fully digested in Lawson on Insanity, 533-768.

Proof of drunkenness is admissible in a prosecution for assault with intent to commit rape. (*State* v. *Donovan*, 61 Iowa, 369.) And in larceny. (*Wood* v. *State*, 34 Ark. 341.) Also in assault with intent to rob. *Scott* v. *State*, 12 Tex. App. 31.

If evidence is relevant to the issue and is properly a part of the *res gestæ* it is admissible, even though it tends to prove the commission of a distinct offense. *McDonald* v. *People*, 25 Ill. App. 365; *Farris* v. *People*, 129 Ill. 527.

In a prosecution for assault with intent to commit a rape upon a female under the age of fourteen years the assault need not be alleged or proven to have been made forcibly. *Porter* v. *People,* 158 Ill. 370.

A female below the age of consent is conclusively presumed to be unable to consent to an act of carnal intercourse. Therefore, in a prosecution for assault with intent to rape such a female, force and lack of consent are not elements of the assault and need not be proved in order to constitute the crime. The assault, in such case, may be consummated even though the female, in fact, invites it. *Commonwealth* v. *Roosnell,* 143 Mass. 32; *State* v. *Wray,* 109 Mo. 594; *State* v. *Grossheim,* 79 Iowa, 75; *Proper* v. *State,* 85 Wis. 615; *People* v. *Courier,* 79 Mich. 366; *Davis* v. *State,* 31 Neb. 240.

The jury are not bound to believe the evidence of the defendant. They may take the fact that he is the defendant into consideration, and give his evidence such weight as they think it entitled to. *Bulliner* v. *People,* 95 Ill. 407; *Hirschman* v. *People,* 101 id. 576; *Jennings* v. *People,* 189 id. 320.

Per CURIAM: Plaintiff in error was convicted in the circuit court of Mercer county of an assault upon Minnie Glancey, a girl thirteen years of age, with intent to commit rape, and was sentenced to the penitentiary.

The evidence for the People tended to prove an assault upon said Minnie Glancey, without her consent and against her will, with the intent charged, at the office of the defendant, who was a veterinary surgeon in Aledo, at about four o'clock in the afternoon of August 31, 1900. The People, as a part of their case in chief, were permitted, against the objection of defendant, to introduce evidence that he had been drinking intoxicating liquors on that day; that while at dinner he was intoxicated, and that about an hour before the alleged assault he was drinking beer out of a bottle at his office, and that

he called a boy sixteen years old across the street and treated him to beer. Defendant denied the assault and testified that he was not drunk, but on cross-examination he was compelled by the court to answer as to how much beer he had in a sack which he took to his office and how much he drank, and whether he invited the boy to drink, and whether he had whisky in his possession, and had been drinking and was drunk on the day succeeding the assault.

Voluntary intoxication furnishes no excuse for crime. (Crim. Code, div. 2, sec. 19.) The law holds men responsible for the natural consequences of their acts, and if all the elements of a crime are present it is no defense that the accused was voluntarily drunk. But if a crime is of such a nature that a particular intent is a necessary ingredient, and no crime is committed unless an act is done with that intent, a defendant may meet the charge of a crime by showing that he was intoxicated to such a degree as to be incapable of forming or entertaining that intent, and neither then nor afterward yielded it the sanction of his will. (Bishop on Crim. Law, sec. 413; *Bartholomew* v. *People*, 104 Ill. 601.) Such proof is to show that an indispensable element of the crime was wanting. In this case the crime alleged consists of an assault with intent to commit the crime of rape. There must be an attempt joined with that specific intent, and the intent is a necessary ingredient of the crime. The defendant made no claim that he was incapable of forming any intent that his acts may have manifested, and made no defense on the ground of drunkenness. The People were called upon to prove the assault and the intent as matters of fact, and it was in making their proof that they were permitted to introduce the evidence that defendant had been drinking, was intoxicated and treated the boy. These facts had no tendency to prove either the assault or the intent with which it was made. If the drinking was to excess, it might prove an intent to become intoxicated; but there is no ground for saying that the fact the

defendant had formed an intent to get drunk, (if such was the fact,) would tend to prove that he had also formed an intent to commit the crime of rape.

As a general rule, where a party is on trial upon a criminal charge, proof of his misconduct not connected with the charge upon which he is being tried should not be admitted, as such evidence is likely to prejudice the jury against the defendant and cause them to lose sight of the issues which they have been sworn to try. *Gifford* v. *People,* 87 Ill. 210; *Hayward* v. *People,* 96 id. 492; *Baker* v. *People,* 105 id. 452; *Farris* v. *People,* 129 id. 521.

In *Gifford* v. *People, supra,* on page 214 it is said: "On the cross-examination of Prosper Washburn, a witness introduced by the defendant to prove former good character, he was asked, 'Have you not heard people say that he (alluding to the defendant) was a gambler or gambled?' This was objected to, but the objection was overruled by the court, and the witness answered that he had heard some say that he gambled. Again, when the defendant gave evidence in his own behalf, he was compelled, over his counsel's objection, to state that he had visited houses of ill-fame in Cleveland and Chicago, and the number of times, and of having had connection with their inmates, and also that he had played cards for money. We have no doubt this evidence seriously prejudiced the defendant with the jury. Evidence of prior misconduct is never admissible in a criminal trial unless it be to prove prior malice towards an individual, or guilty knowledge, neither of which can have pertinency in cases like the present. (1 Wharton on Crim. Law,—7th ed.—sec. 639; Roscoe on Crim. Evidence,—5th Am. ed.—p. 97; 1 Phillips on Evidence,—Cowen, Hill & Edwards' notes,—p. 765.) And particular acts of misconduct are never admissible in rebuttal of proof of defendant's good character. (*McCarty* v. *People,* 51 Ill. 231.) Nor can it be said this evidence was admissible for the purpose of impeaching the defendant's reputation as a witness, only, although not for

the purpose of proving the offense charged. The reputation of a witness cannot be impeached by proof of particular acts. It must be by proving his general reputation for truth and veracity to be bad.—*Frye* v. *Bank of Illinois*, 11 Ill. 367; *Eason* v. *Chapman*, 21 id. 33; *Crabtree* v. *Kile*, id. 180; *Hansell* v. *Erickson*, 28 id. 257; *Dimick* v. *Downs*, 82 id. 570."

In *Hayward* v. *People, supra*, on page 502 the court say: "On cross-examination of the accused when on the stand as a witness, the court compelled him, against objections interposed, to testify that he had frequented other saloons in Chicago, and drank, and played cards and billiards on divers times at other saloons in Chicago. This, we think, was error, and may have prejudiced some of the jurors against the accused. We cannot perceive that these circumstances have any legitimate bearing upon the issue in the case, or that they were competent as bearing upon the credibility of the accused."

In *Baker* v. *People, supra*, on page 459 we say: "Assuming the evidence of the prosecutrix to be true, it established two distinct offenses,—one committed by Baker alone, and the other by him and Mrs. Graves jointly; and if the prosecution elected to proceed for the latter offense, all evidence of the former should have been excluded from the jury, as it is well settled that upon the trial of a party for one offense growing out of a specific transaction you cannot prove a similar substantive offense founded upon another and separate transaction, but in such case the prosecution will be put to its election. An exception to this rule is found in prosecutions for passing counterfeit money, and the like, where previous attempts to pass counterfeit money may be proved for the purpose of showing guilty knowledge; but the principle involved in this class of cases has no application to the case in hand."

In *Farris* v. *People*, on page 528 we hold: "The general rule, that evidence of a distinct, substantive offense cannot be admitted in support of another offense, is laid

down by all the authorities. It is, in fact, but the reiteration of the still more general rule, that in all cases, civil or criminal, the evidence must be confined to the point in issue, it being said, however, by authors on the criminal law, that in criminal cases the necessity is even stronger than in civil cases of strictly enforcing the rule, for where a prisoner is charged with an offense it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment and matters relating thereto, which, alone, he can be expected to come prepared to answer. (3 Russell on Crimes,—5th ed.—368; 1 Roscoe on Crim. Evidence,—8th ed.—92.) 'No fact which, on principles of sound logic, does not sustain or impeach a pertinent hypothesis is relevant, and no such fact, therefore, unless otherwise provided by some positive prescription of law, should be admitted as evidence on a trial. The reason of this rule is obvious. To admit evidence of such collateral facts would be to oppress the party implicated, by trying him on a case for preparing which he has no notice, and sometimes by prejudicing the jury against him. * * * To sustain the introduction of such facts they must be in some way capable, as will presently be seen more fully, of being brought into a common system with that under trial.' (Wharton on Crim. Evidence, sec. 29.) 'In criminal cases there are peculiar reasons why the test before us should be applied to proof of collateral crimes.' (Ibid. sec. 30.) 'This rule,' says Greenleaf, vol. 1, sec. 52, (not confining it to criminal cases,) 'excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute,—and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them; and, moreover, the adverse party, having had no notice of such a course of evidence, is not prepared to re-

but it.' In *Sutton* v. *Johnson*, 62 Ill. 209, which was a civil suit for an assault and battery and assault with intent to commit a rape, a witness on behalf of the plaintiff was allowed to testify that the defendant had told him 'that he and his wife had not been getting along well together, and he had to be too intimate with the hired woman, or was forced to be too intimate with the hired woman,' not stating who the woman was, and for that error alone a judgment in favor of the plaintiff was reversed, Mr. Justice SHELDON saying in the opinion rendered: This evidence did not tend to prove the assault * * * and did tend to prejudice the jury against the defendant. There should not have been brought into the trial of the simple issue in this case anything which might be regarded as slanderous matter, or other improper conduct of the defendant, to make against him, and by its consideration be likely to influence the verdict of the jury.' It is conceded that the mere fact that testimony may tend to prove the commission of other crimes or to establish collateral facts does not necessarily render it incompetent, provided it is pertinent to the point in issue and tends to prove the crime charged; but the general rule is against receiving evidence of another offense, and no authority can be found to justify its admission unless it clearly appears that such evidence tends, in some way, to prove the accused guilty of the crime for which he is on trial. Says Agnew, J., in *Shaffner* v. *Commonwealth*, 72 Pa. St. 65: 'To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor by connection which shows that he who committed the one must have done the other.' And he adds: 'If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to

be prejudiced by an independent fact carrying with it no proper evidence of the particular guilt.' In *Lapage* v. *State*, 57 N. H. 245, Cushing, C. J., after citing many cases in which such proof was held competent, and showing that in each of them some logical connection existed between the independent crime proved and that charged, says: 'It should also be remembered that, this being a matter of judgment, it is quite likely that courts would not always agree, and that some courts might see a logical connection when others could not. But however extreme the case may be, I think it will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved, other than the tendency to commit one crime as manifested by the tendency to commit the other.' In *Commonwealth* v. *Ferrigan*, 44 Pa. St. 386, Thompson J., says: 'The rule on this subject may, in substance, be stated to be, that when facts and circumstances amount to proof of another crime than that charged, and there is ground to believe that the crime charged grew out of it or was in any way caused by it, such facts and circumstances may be proved to show the *quo animo* of the accused.' Again, in *Commonwealth* v. *Merriam*, 14 Pick. 518, Putnam, J., said: 'Evidence should be excluded which tends only to the proof of collateral facts. It should be admitted if it has a natural tendency to establish the fact in controversy. If the evidence is irrelevant it should be rejected for two reasons: First, it would have a tendency to mislead the jury from the true subject of the inquiry; and second, no man is to be expected to go to trial prepared to prove things which are unconnected with the issue.' Our conclusion from all the authorities is, that whatever be the object of the testimony,—whether to prove guilty knowledge, as in prosecutions for passing forged notes or counterfeit money, where proof of other offenses of the same kind is competent; to prove that the act was not acci-

dental or done by mistake, as in case of poisoning or embezzlement; to prove motive, as on trial of a husband for the murder of his wife, in which case, in the absence of direct evidence, proof of adultery by the prisoner with another woman was held competent; or in cases where the prisoner says he did not do the act, and supports his denial with the assertion that no motive existed within him for the commission of such a crime, or to refute some anticipated defense,—proof of a distinct, substantive crime is never admissible unless there is some logical connection between the two, from which it can be said the one tends to establish the other."

Counsel for the People say, however, that intoxication does away with moral restraint and that liquor incites to evil actions and renders a person more liable to commit crime. If that is so, they have found no authority for the admission of evidence that one accused of crime had a mind susceptible to evil thoughts or without moral restraint, either as a temporary or permanent condition. The only effect of the evidence was to prejudice the jury against defendant on account of an evil habit, and because he had done wrong in drinking and giving drink to the boy. It was prejudicial error to admit it.

The defendant was forty years old, and the girl, Minnie Glancey, was thirteen years of age. She testified to an assault by the defendant which was forcible and against her will and which she resisted. She said that she screamed and ran away from the office. The screams were heard by others, and the fact that she cried out was not denied. Defendant's explanation was, that he proposed to put a lotion on a sore on her arm; that she said, "No, sir;" that he took hold of her to put her dress sleeve up, and that she gave a little scream as if she was frightened and made for the door and went out.

Defendant asked the court to give to the jury instructions numbered 13 and 14, directing them to find him not guilty unless they believed, from the evidence, beyond

a reasonable doubt, that he committed an assault upon said girl with intent to have carnal intercourse with her at all events against her will and without her consent. The court refused to give said instructions, and gave instruction numbered 2 asked by the People, as follows:

"The jury are instructed that if you find, from the evidence, beyond a reasonable doubt, that on the date mentioned in the indictment the defendant was above the age of sixteen years and that the prosecuting witness was under the age of fourteen years; and if you further find, from the evidence, beyond a reasonable doubt, that the defendant and the prosecuting witness were then in the office of the defendant, and that the defendant then and there had the intent and purpose to have carnal intercourse with Minnie Glancey, either with or without her consent, and that in pursuance of and in furtherance of such intent and purpose the defendant then and there did acts toward the accomplishment of such intent and purpose, and that he had then and there the present ability to accomplish such intent and purpose, then you should find the defendant guilty as charged."

The ruling of the court on these instructions is claimed to be erroneous because an assault must necessarily be an attempt to do an injury with violence, and therefore the statute, which makes the consent of a girl under fourteen immaterial, does not extend to the assault which cannot be committed with her consent. In view of the evidence the question does not seem important. All the evidence for the People tended to prove a violent assault, and the defendant absolutely denied any attempt at all. There was no evidence tending to prove that the defendant sought consent with no intention to use force and voluntarily desisted from unsuccessful persuasion. The principle stated in the instruction is correct and according to our decisions, although the authorities are not uniform on the subject. That view was adopted in *Porter* v. *People,* 158 Ill. 370, where Walter A. Porter, being over

sixteen years old, was indicted for an assault with intent to commit rape upon a girl under fourteen, and the indictment did not charge force. It was held that, inasmuch as the consummated offense would have been rape, it was immaterial whether the offense was forcible and against the will of the girl or not, and that the indictment was good.

The statutes bearing on the question are as follows: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Crim. Code, div. 1, sec. 20.) "Rape is the carnal knowledge of a female, forcibly and against her will. Every male person of the age of sixteen years and upwards, who shall have carnal knowledge of any female person under the age of fourteen years, either with or without her consent, shall be adjudged to be guilty of the crime of rape." (Crim. Code, div. 2, sec. 237.) "An assault with intent to commit  *  *  *  rape  *  *  * shall subject the offender to imprisonment in the penitentiary for a term of not less than one year nor more than fourteen years." (Crim. Code, div. 1, sec. 23.)

The purpose of the statute is that a girl under fourteen years of age shall be incapable of consenting to an assault upon her for the purpose of carnal intercourse, and that in law such an assault is without her consent and against her will. Even in the case of an adult woman and without a statute, if she is incapable of consenting through idiocy, unconsciousness or the like, the law assumes that intercourse with her is without her consent and the offense is rape. The statute extends the principle to girls under fourteen years of age on account of immaturity of judgment and want of comprehension of the consequences of an attempted wrong to them, and, by providing that they cannot consent, supplies all the essentials of an assault, regardless of force. *Commonwealth* v. *Roosnell*, 8 N. E. Rep. 747; *People* v. *Courier*, 79 Mich. 366; *State* v. *Wray*, 109 Mo. 594,

The instruction is also objected to as not requiring proof of an overt act by the defendant to accomplish the purpose of having carnal knowledge of the girl. The acts must amount to an attempt to accomplish such purpose, and in that respect the instruction is not as definite as it should be as a general rule of law. In this case the acts referred to could only be the violent attempt testified to on one side and denied on the other, and the instruction could not have misled the jury into an understanding that it referred to acts falling short of an attempt.

Objection is also made to an instruction defining reasonable doubt, as a verbose dissertation on the subject, requiring more explanation and elucidation than the words it undertakes to define. Perhaps the words are as plain, exact and readily understood as the explanations and paraphrases by which the instruction attempts to enlighten the jury; but all that is contained in it has been said by the courts in discussing the subject, and the explanations are all correct. It is the same instruction given in *Bean* v. *People*, 124 Ill. 576, where it was held not error to give it.

The court refused instruction numbered 11 asked by defendant, as follows:

"The jury are instructed that each juror should decide for himself, upon his oath, from the law and the evidence, as to what his verdict should be. It is the duty of jurors, in considering of their verdict, to consult with each other, but no juror should yield his deliberate, conscientious convictions as to the guilt or innocence of the defendant at the instance of his fellow-jurors, nor surrender his honest convictions as to the guilt or innocence of the defendant for the sake of unanimity or to avert a disagreement."

A similar instruction was refused in *Little* v. *People*, 157 Ill. 153, and the refusal was approved. It is the duty of jurors to consult with each other with a view to reach-

ing the truth and agreeing upon a just verdict, and they should not be told to be unyielding and stubborn, or to approach consultation and discussion in that spirit. The instruction is a mere invitation and encouragement to a disagreement—a direction to consult with the others, but for each one to hold to his belief at all hazards.

Instruction numbered 12 was asked by defendant and refused, as follows:

"The jury are instructed that the law not only presumes that the defendant is innocent until he is proven guilty beyond any reasonable doubt, but the law also presumes that the defendant has a good character and reputation as a law-abiding, peaceable citizen until the contrary is shown by the evidence, and it is not necessary for the defendant to prove his reputation in that respect. The jury is not at liberty to consider the omission to prove good character as a circumstance against him, but must presume that he is a man of good character and reputation in that respect,—and that, without any proof on the subject,—and should take the good character of defendant into consideration in making up their verdict."

Defendant had a right to put his reputation as a law-abiding citizen in issue if he saw fit. (*Jupitz* v. *People*, 34 Ill. 516.) In such case it would be a proper subject for evidence on each side. If he should establish the fact that he was of good character as a law-abiding, peaceable citizen, the jury would be bound to take it into account in making up their verdict; but if he should offer such evidence the People could offer evidence to the contrary, and would have an opportunity to prove, if they could, that his character and reputation were bad. Defendant did not choose to put his reputation in issue or prove that it was good, but sought by the instruction all the benefit of an affirmative finding of such fact without proof or an opportunity to combat the claim or prove the negative. If the instruction were the law, a defendant need never prove good reputation, but could take

the benefit of proof which perhaps he could not make. The court was right in the refusal.

There is a question as to a variance in the name of a juror that will not arise on another trial, and no other question is raised of such importance as to require attention.

Because of the error in admitting evidence the judgment is reversed and the cause remanded.