STATE OF IOWA, Appellee, v. GEORGE S. POTTER, Appellant.

LARCENY:   Ownership—Devisees.  The ownership of a promissory note
1   stolen after the death of the testate payee thereof may, in the
    absence of an executor, be laid in the testamentary devisees.

LARCENY:   Consent—Failure of Proof.  Nonconsent to the taking is
2   an' indispensable element of larceny, and must be proved beyond
    all reasonable doubt.

LARCENY:   Evidence—Animus Ferandi.  Testimony to the effect that
3   a party accused of the larceny of a note brought suit thereon is
    admissible on the issue of intent to permanently deprive the owner
    of the note of his property.

LARCENY:   Evidence—Sufficiency.  Evidence held insufficient to sus-
4   tain a verdict of guilty.

*Appeal from Louisa District Court.*—OSCAR HALE, Judge.

MARCH 7, 1922.

REHEARING DENIED FEBRUARY 6, 1923.

THE defendant was indicted for the crime of larceny.  Ver-
dict of jury finding the defendant guilty, and he was sentenced
to the penitentiary for the statutory period.  Defendant ap-
peals.—*Reversed.*

*E. M. Warner, H. O. Weaver,* and *Arthur Springer,* for
appellant.

*Ben J. Gibson,* Attorney-general, and *Molsberry & Reaney,*
for appellee.

DE GRAFF, J.—I.  The indictment charges one George S.
Potter with the larceny of two certain promissory notes.  The
allegation of ownership therein is as follows:  "Both of which
notes were the property of David L. Stetson,
1. LARCENY: own-   Pearl Stetson, and Harriett Williams, devisees
   ership: devisees.
under the will of Fred B. Stetson, deceased."
    A promissory note is the subject of larceny.  Code Section

4831; *State v. Orwig,* 24 Iowa 102. The identity of notes may be established by circumstantial as well as by direct evidence. *State v. Hoppe,* 39 Iowa 468. And parol evidence is admissible to show the contents and amount of stolen notes, if lost and non-producible. In the instant case the notes in question were lost instruments.

An indictment for larceny must charge that the thing alleged to be stolen is the property of some person other than the accused, and the proof must sustain the averment beyond a reasonable doubt.

In the former opinion of this court in this case, which is now withdrawn but reported in 186 N. W. 919, an error of fact was made in that it was assumed that there was a duly appointed, acting and qualified executor of the estate of Fred B. Stetson, deceased at the time that the larceny charged in the indictment was committed. This error of fact is called to the attention of the court by the petition for rehearing on behalf of the State. The record discloses the fact to be that at the time of the alleged larceny there was no qualified executor of the said estate.

The question presented, then, is whether the devisees named in the will of Fred B. Stetson had such right, title, or interest in the personal property alleged to have been stolen by the defendant, that ownership could be predicated in them in an indictment for the larceny of said property.

If a person has a special property in a thing or holds it in trust for another, the ownership may be laid in either the real owner or the bailee. *State v. Mullen,* 30 Iowa 203. This rule is applicable to an executor, receiver, or trustee, and gives him a qualified estate sufficient to entitle him to the possession thereof, and upon which an allegation of ownership may be predicated in an indictment for larceny.

In the instant case is there a fatal variance between the indictment and the proof offered to sustain the material allegation as to ownership? Fred B. Stetson, payee and holder of the notes alleged to have been stolen by this defendant, died testate February 25, 1918. Under the terms of his will he devised "one half of all property, personal and real, to David L. Stetson, brother, Auburn, Maine. And in case he does not survive

me, the same to go to his lawful heirs.'' The other one half of
the testator's property, both real, and personal, was devised to
Pearl Stetson and Harriett Williams, children of his deceased
brother. There were no specific bequests.

The alleged larceny of the notes occurred prior to the ap-
pointment of Ed. S. Hicklin as executor of the estate. He qual-
ified April 2, 1918. The indictment charges the crime ''on or
about the 10th day of March, 1918.'' It thus appears from both
the allegations and the proof that the alleged larceny occurred
during the interim between the date of the death of Stetson, the
owner of the notes, and the date on which the executor qualified.

The distribution of an estate through administration does
not create a new title in anyone. The final settlement and de-
cree ascertains what property and to whom the title attaches.
*Moore v. Gordon,* 24 Iowa 158; *Christie v. Chicago, R. I. & P.
R. Co.* 104 Iowa 707. Title to personal property upon the death
of the owner must find lodgment in someone otherwise ownership
therein would terminate.

It is said on rehearing in *Phinny v. Warren,* 52 Iowa 332:
''Upon the death of the payee of the note, it may be conceded
that the note became the property of the administrator, if there
was one. But if no administrator is appointed, it will not do to
say the note ceased to be property. Property cannot be thus
blotted out.''

If an administrator or executor has been appointed, and
personal property to which he is entitled to possession for the
purpose of distribution is stolen, the indictment should predi-
cate ownership in the administrator or executor. If no adminis-
trator or executor has been appointed at the time of the larceny
of personal property to which he is entitled to take possession,
then the court will recognize an equitable title in the parties
entitled to distribution, whether devisees or next of kin. In
the absence of creditors such persons have a complete equity in
the property, and the property could be distributed without ad-
ministration if they choose so to do. Who else, we ask, could
be named under such circumstances as the owners of the
property?

The allegation of ownership is required in order that a
person accused of larceny may be advised in this particular and

be prepared to answer thereto, and also that the accused may thereafter be able to plead a judgment of conviction or acquittal as an adjudication. *State v. Kiefer,* 172 Iowa 306.

Furthermore, if. the act charged in the indictment is fully identified, and the facts are alleged in such manner that the possibility of ownership in the accused is rebutted, he is not in a position to claim prejudice. *State v. Congrove,* 109 Iowa 66.

Although the devisees herein were not entitled to possession, as against a duly appointed executor or administrator, they had an undivided interest in the estate subject to the payment of estate debts, if any, and the costs of administration. There is no larceny without trespass upon the property rights of another. *State v. Clark* 141 Iowa 297. Nonconsent is bottomed upon this principle. An indictment cannot be aided by intendment and the essential facts as alleged must be proved. *State v. Ashpole,* 127 Iowa 680. It is only when the variance between the allegations of an indictment and the proof offered is regarded as material that the variance is fatal. Courts do recognize critical distinctions in charging a person with crime. Anglo-Saxon jurisprudence has given us two dominant rules: (1) That every case must have a well defined issue; and (2) that the best evidence of which the case is susceptible must be produced, and it must be pertinent to the issue.

There must be proof beyond a reasonable doubt of every essential ingredient of the crime charged. Guilt is based on legal definition and proof, and nothing is left to inference, intendment, or presumption. The trial court recognized this principle and in an instruction told the jury: "That it was incumbent upon the State, before a conviction could be had, to prove beyond a reasonable doubt: (a) That the property in question was the property of the person named in the indictment."

2. LARCENY: consent: failure of proof.

No evidence was introduced by the State to negative the consent of the devisees in whom ownership was alleged in the indictment. The State recognized that nonconsent must be established, and to meet this requirement the executor Hicklin was called as a witness and answered: "I never authorized George S. Potter or anyone for him to take the notes away from the estate." At the time of the larceny Hicklin was not the

executor, and consequently could not give or withhold consent in this particular.

Evidence was introduced that on July 22, 1918, the defendant herein instituted a suit against the makers to recover judgment on the notes. This was competent as tending to establish the intent of the defendant to deprive the owner of the property permanently thereof.

3. LARCENY: evidence: *animus ferandi.*

The conviction of the defendant rests primarily upon the testimony of his brother, L. K. Potter, the plaintiff's witness. He denied he stole the notes, and said that they belong to him if he wanted them. He testified: "I thought everything in the house belonged to us after Stetson died."

4. LARCENY: evidence: sufficiency.

Stetson lived in L. K. Potter's house for 13 years prior to his death. The only rational theory upon which the guilt of the defendant can be predicated is that the brother was the innocent agent of the defendant in securing possession of the notes. The record fails to establish a conspiracy, and if the brother is viewed as an accomplice there is a failure of corroboration. The plaintiff is bound by the evidence it introduced, and is not in a position to impeach its own witness. The record before us is not sufficient to sustain the indictment and verdict, and the cause is reversed.

II. Contrary to the majority view of the court, the writer of this opinion would reverse this cause for another and an additional reason.

The court upon the trial of this indictment permitted the State to offer evidence tending to prove that the indorsements of the payee on the notes alleged to have been stolen were forged indorsements. The notes were not in evidence, and it is not shown that after the death of the holder, Fred B. Stetson, anyone was in possession of said notes except the defendant and his brother, who testified that he gave them to the defendant upon the latter's request and direction. The proof of forgery necessarily connected the defendant with the offense of forgery, and in legal effect permitted the State to offer evidence tending to connect the defendant with a separate and distinct crime. With few exceptions evidence of a distinct substantive offense is inadmissible in support of the offense charged. In all cases,

civil and criminal, the evidence must be confined to the point in issue, and in criminal cases the necessity is even stronger for the strict enforcement of this rule.

"The facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment and matters relating thereto, which alone he can be expected to come prepared to answer." *Addison v. People,* 193 Ill. 405 (62 N. E. 235).

It was competent to prove the possession of these notes in the defendant and the time and manner of securing possession. Whether the notes were indorsed or not at the time of the alleged larceny. is neither alleged nor proved. Indorsements have no logical or relevant connection with the crime charged. There was no allegation as to indorsement. This was proof of a collateral fact, if anything. It had no tendency to establish the fact in controversy. The evidence was not admitted on a theory to prove scienter, motive, general scheme or system, for these matters were not involved. See *State v. Vance,* 119 Iowa 685. A person may not be convicted of larceny upon evidence which might tend to prove him guilty of forgery. This evidence was prejudicial, and the ruling of the court on its admission in the opinion of the writer is reversible error. With the filing of this opinion the petition for rehearing by appellee is overruled, and the judgment entered is—*Reversed.*

PRESTON, C. J., WEAVER, STEVENS, and ARTHUR, JJ., concur in the reversal.