(No. 37027.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT FAULISI, Plaintiff in Error.

*Opinion filed September 28, 1962.*

SCHWARTZ, ZABAN AND BUCHALTER, of Chicago, (SEYMOUR ZABAN, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and MATTHEW · J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant was indicted for the crime of rape. After pleading not guilty and waiving his right to trial by jury, he was tried by the court, found guilty, and sentenced to the penitentiary for a term of four years. His principal con-

tention on this writ of error is that the evidence is insufficient to sustain the finding of guilt.

The act of intercourse is admitted. The question is the sufficiency of the evidence to prove beyond a reasonable doubt that the intercourse was forcible and against the will of the complaining witness.

The incident giving rise to the charge of rape took place in the home of the complaining witness between 3:00 A.M., and 4:00 A.M., on April 11, 1961. On April 10, 1961, at about 10:00 P.M., the defendant was driven to work by the husband of the complaining witness, whom he had known for about 14 years. They stopped first at the Maywood race track and then proceeded to their place of employment, arriving there about 11:20 P.M. Both men were due to commence work at 11:30 P.M. At about midnight defendant was sent home by his boss, as there was insufficient work. The husband loaned defendant his car to ride home in, saying he would ride home in one of the trucks.

The defendant rang the door bell at the complaining witness's house about 3:00 A.M. and was admitted by her. They sat on a sofa and talked for 10 or 15 minutes. She was clad only in her pajamas and did not put anything over them. She testified that the pajama tops were of a quilted material and the pants of rayon. Although she testified that these pajamas were of a type that could be properly worn in company without anything over them, it was demonstrated in the court room that the pants were, at least to some extent, transparent. They also had a hole in the crotch, which the complaining witness admitted was there before the arrival of the defendant.

After they had conversed for 10 or 15 minutes, the defendant started kissing and fondling the complaining witness and then started to pull her pants down. She testified that she told him not to do it, that she did not return his kisses willingly, and tried to fight him off. According to the

defendant's testimony, the complaining witness was co-operative and returned his kisses. Apparently the sectional sofa which the two were occupying came apart and they fell to the floor. They got up and walked to the bedroom, where the act of intercourse (or, according to the defendant's testimony, two acts) took place. Defendant testified that the complaining witness did not resist. She, however, testified that he forced her into the bed room by twisting her arm and that she struggled trying to fight him off and was yelling for him to go away and leave her alone. '

There is a conflict in the testimony as to the circumstances of the defendant's leaving the house. The complaining witness testified that after the act of intercourse, she told the defendant she was going to call her husband at work, and that she did call her husband while the defendant was in the bath room, and then the defendant left the house. Defendant's testimony was to the effect that, after the completion of the act, they were talking when the door bell rang and there was a knocking at the door. Thinking it might be the husband, the defendant told the complaining witness to get dressed right away, and she got up and put her pajamas on. The defendant looked out the window but saw no one at the door. He then washed up and left the house.

The testimony for the People is that the complaining witness called her husband at work about 4:00 A.M., that he came home at once and his wife told him the defendant had raped her. Neither she nor her husband called the police. The evidence is in substantial agreement that the husband then went to the defendant's house and a fight ensued during which the husband hit the defendant over the head with an ash tray. The defendant's wife called the police at the request of the defendant.

The complaining witness testified that defendant inflicted a bruise on her eye and a bruse on her arm and leg. There was ample corroboration that she had a ¼ inch cut near one eye, but there was no satisfactory corroboration

as to the bruises on her arm and leg, and three witnesses, one of them a witness for the People, who observed the complaining witness on the following day, testified that they had not seen any such bruises. The complaining witness also testified that she was sent by the police to a doctor for an examination, but that she did not complain of any injuries to the doctor. The doctor did not appear as a witness.

Reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases, (*People* v. *Qualls*, 21 Ill.2d 252; *People* v. *Kazmierczyk*, 357 Ill. 592,) and it is the duty of the reviewing court not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. *People* v. *Qualls*, 21 Ill.2d 252; *People* v. *Abbate*, 349 Ill. 147.

When the charge is forcible rape, the fact that the act of intercourse was performed forcibly and against the will of the complaining witness is a necessary element of the crime which must be proved beyond a reasonable doubt. The degree of force exerted by the defendant and the amount of resistance on the part of the complaining witness are matters that depend upon the facts of the particular case. Thus we have held that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker. (*People* v. *Ardelean*, 368 Ill. 274.) It is, however, fundamental that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will.

Here the evidence is undisputed that defendant had no weapon. Neither did he make any threats of physical violence, except insofar as is shown by the complaining witness's testimony that defendant said he wouldn't harm her if she went along. The record discloses that the defendant was 5 feet 5½ inches tall and weighed 140 pounds, while the prosecutrix was 5 feet 7½ inches tall and weighed 128 pounds. While these statistics by no means prove that the defendant could not have overpowered the complaining witness, they do suggest that defendant was not of such physical proportions as to make resistance useless and further suggest that if she were, in fact, forcibly raped, there should be substantial physical evidence of a struggle. Here the only physical evidence of a struggle was the testimony of the complaining witness as to three bruises. Her testimony was corroborated with respect to only one of these. It is significant, we believe, that although the complaining witness was sent by the police for a physical examination, she made no complaint of injuries to the examining doctor, nor was the doctor produced as a witness. The complaining witness's testimony as to her resistance was, on direct examination, limited to general statements like "I was fighting him." On cross-examination, she stated that she might possibly have scratched him. It may well have been that the beating administered to defendant by the husband made it difficult or impossible to ascertain whether or not defendant bore any marks of a struggle with the complaining witness. In any event, no attempt was made by either side at the trial to prove or disprove the existence of any such marks.

By her own admission, the complaining witness did not cry for help, although she testified that she was yelling for the defendant to get out and leave her alone. The record indicates that the complaining witness lived upstairs in a house located approximately 20 feet to the rear of another house. Both the downstairs of the house of the complaining witness and this other house were occupied. There were a

number of other houses nearby. Under these circumstances, one would reasonably suppose that a woman who was being assaulted would have cried for help and that her outcry would have been heard by someone in the neighborhood.

We are constrained to say, after a careful review of the entire record, that the testimony of the complaining witness is not sufficiently convincing to lead to an abiding conviction of the defendant's guilt. Under such circumstances her evidence should be corroborated by some other testimony, fact or circumstance. (*People* v. *Hiller, 7* Ill.2d 465.) Here the only corroboration concerned the ¼-inch cut under her eye, and the fact that she telephoned her husband and told him she had been raped. In our opinion, however, more striking than these corroborating factors is the complete absence from the record of other corroborating evidence which might reasonably have been supposed to be available had the complaining witness been raped, for example, the failure to produce medical testimony as to the injuries to the complaining witness despite the fact that the record shows that there was a medical examination, her failure to cry for help, and the absence of any physical evidence of any struggle sufficient to overpower physically or overcome the will of the complaining witness. Significant also, in our view, is the fact that neither the prosecutrix nor her husband made any complaint to the police until after the police had been called by the defendant's wife at the request of the defendant.

Upon the review of the entire record in this case, we are forced to conclude that the evidence was insufficient to establish beyond a reasonable doubt that the act was forcible and without the consent of the complaining witness. Accordingly, the conviction cannot stand.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*