THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE MIXTER, Defendant-Appellant.

(No. 56754;

First District—November 1, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Elliott M. Samuels and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Peter F. Costa, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The defendant, Clarence Mixter, was found guilty of rape and deviate sexual assault after a bench trial in the Circuit Court of Cook County. He was sentenced to a term of eight to twelve years on each count, the sentences to run concurrently. He contends on appeal his guilt was not established beyond a reasonable doubt.

The complainant, a 27-year old married woman, testified she was out drinking with her girl friends on the evening of September 3, 1969, at the Chateau Farm Restaurant in Calumet City. She stated she had three drinks in the three and one-half hours she was there and left alone about 1:00 A.M. Her friends had left ahead of her. She then drove to a hamburger stand about three blocks away and got a couple of hamburgers. She testified she got back in her car and began driving out when the defendant jumped up from the back seat, grabbed her around the neck, and told her if she wanted to live to keep driving. A short while later the defendant climbed over the seat and assumed control of the car.

She stated she jumped out of the car while it was moving 15 to 20 miles an hour, but did not remember hitting the ground and remembered nothing until she was back in the car. She had scratches on her legs and face, which she said resulted from the fall. The defendant allegedly began hitting her and told her not to do it again. He drove to a deserted forest area, where he told her to take off her pants and lie on the front seat. She complied but stated he tore at her nylons.

Two acts of intercourse and one act of oral copulation followed. She said she did not struggle or scream because she was forced down on the seat and had no choice.

When the defendant began driving again the complainant testified she "conned" him by making up a story that her son was in the hospital in Hammond in need of an operation and asked if he would take her there. He agreed, but got lost and stopped at a police station in Dolton to ask directions. She stated he asked her to go into the station with him. When they got inside she stood beside him while he asked for directions. Then she asked to use the washroom, retreated behind a door 15 to 20 feet away, and yelled for the police officers to grab the defendant because she did not know him. She did not mention rape to the police then or at any time.

The defendant, a truck driver from Pennsylvania, testified he had been in a number of bars along the strip in Calumet City that night, shooting pool and drinking beer. He stated the complaining witness approached him, told him her name was Penny, and that he "looked like that guy on television, that actor—I forget his name now—Rock Hudson, or some-

thing." He told her he hauled steel and was looking for a woman with an apartment for when he came to Chicago. She said she had her own apartment and was divorced from her husband. Mixter asked her what she was doing that night and she replied she had to go somewhere, but she would meet him at a hamburger place in 20 minutes. He walked there at the appointed time and waited for several minutes. She drove up in her car, and he noticed her face was banged up. She told him her "m-f old man had beat her up and taken her last $50."

He got in the passenger side of the automobile and she drove to a parking lot a few blocks away. She asked him if $25 would be all right and he agreed. They engaged in intercourse and other sexual acts in the car. Afterwards she suggested they go to a place in Blue Island so he would know where it was and be able to pick her up when he got in town. He started to drive, and she told him a story about her son being in the hospital in need of an operation and how the doctor wanted $100 before he would do it. She asked him for the money, but he told her he would go with her to the hospital and tell the doctor he would take care of the operation himself. He further testified that after he had asked directions in the police station, the complainant asked to use the washroom and he started to leave, intending to wait for her in the car. He was stopped on the way out by a police officer and asked why he had beaten her.

The defendant contends he was not proven guilty beyond a reasonable doubt because the testimony of the complainant is incredible, her testimony was not corroborated, and the evidence does not indicate the sexual acts were performed against the complainant's will.

■■ In *People v. Faulisi* (1962), 25 Ill.2d 457, the court stated the rules governing the review of evidence in rape cases:

> "Reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases, (*People v. Qualls,* 21 Ill.2d 252; *People v. Kazmierczyk,* 357 Ill. 592,) and it is the duty of the reviewing court not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged."

The defendant suggests it is inherently incredible that a rapist would stop at a police station to ask directions and then invite his victim to come along inside with him. In addition, there was no accusation of rape until the indictment. According to the complainant's own testimony, she told the policemen to grab the defendant because "I didn't know him." She did not say she had been raped, and when the officer stopped Mixter, he asked him why he had beaten her. Furthermore, she waited quietly be-

side the defendant while he obtained the directions before·saying anything.

There is also little to corroborate the material elements of force and lack of consent. She did not tell the police she was raped but went to a nearby hospital alone because she knew the doctor there. The examining physician found no evidence of vaginal trauma or other injuries in the pelvic region. Sperm was found in her vaginal tract, but the defendant admitted having intercourse with the complainant and alleged the acts were performed with her consent. No marks or scratches were found on the defendant.

The complainant submitted photographs of scratches and abrasions on her face and legs taken two days after the incident by a professional photographer, but there was no evidence of how or when they were caused.

Finally, the complainant's own testimony does not prove the sexual acts were accomplished without consent. She testified she voluntarily removed her underclothing when asked and said she did not struggle or scream or resist in any way, even though the defendant did not have a weapon. She also stated she carried on a conversation with the defendant during intercourse. In *People v. DeFrates* (1965), 33 Ill.2d 190, the court said:

> "Where, as here, the charge is forcible rape, it must be proved beyond a reasonable doubt that the act of intercourse was performed forcibly and against the will of the complaining witness. And while useless or foolhardy acts of resistance are not necessary, if the prosecutrix has use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. (*People v. Faulisi*, 25 Ill.2d 457, 461; *People v. Qualls*, 21 Ill.2d 252.) Voluntary submission by the female, while she has the power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of forcible rape. *People v. Scott*, 407 Ill. 301, 306."

■■ In the instant case the behavior of the complainant established by her own testimony is not consistent with forcible rape.

For these reasons, the judgment of the Circuit Court of Cook County is reversed.

Judgment reversed.

BURMAN and ADESKO, JJ., concur.