(No. 44203.—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RICHARD MUELLER, Appellant.

*Opinion filed January 26, 1973.—Rehearing denied April 25, 1973.*

190

PAUL E. GOLDSTEIN, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and TERENCE J. MAHONEY, Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Following a bench trial in Cook County circuit court, defendant Richard Mueller was convicted of deviate sexual assault and burglary and sentenced to concurrent terms of imprisonment for 2 to 10 years and 1 to 5 years respectively. The Appellate Court for the First District affirmed (131 Ill. App. 2d 10), and we granted leave to appeal.

Defendant argues that the State failed to prove the element of force essential to the crime of deviate sexual assault; that certain of the testimony received was inadmissible hearsay; that he was denied his right to counsel during an out-of-court identification procedure; and that his in-court identification by the prosecutrix had no basis independent of a suggestive pretrial confrontation.

In the early morning of July 19, 1967, sisters Nancy

and Cindy Lemke were asleep in their bedroom in the Lemke home on South Harding Avenue in Chicago. The two girls shared the lower bunk of a double-bunk bed; also sleeping in the children's bedroom were an older brother on the upper bunk and a younger sister on a separate single bed. Sometime in the pre-dawn hours, Cindy, six years of age, awoke and saw the defendant pass the door of their bedroom as he went from the kitchen to the dining room; Nancy, aged seven, was asleep. A short while later, the defendant entered the children's bedroom and awakened Nancy; he pulled down her panties, fondled her, and then performed an oral sex act upon her. The defendant was in the bedroom for about ten minutes; during the occurrence Cindy was awake and sitting up in bed next to Nancy. After defendant left, Nancy and Cindy went to the door of their bedroom and peeked into the kitchen to see if he was still there. They saw that defendant had gone; they also observed their father's trousers on the kitchen floor and his wallet lying on the kitchen table. The girls went back to sleep, later reporting the incident to their parents when the family arose at about seven o'clock.

On entering the kitchen that morning the girls' parents discovered the outer rear door to their home standing open, as was a kitchen window; they also found that cash had been taken from two wallets and that a wristwatch and electric shaver were missing. After talking with Nancy and Cindy, their parents summoned the police. Shortly after interviewing the Lemke family, police returned with defendant, who was picked up at his residence several doors away. Nancy identified him as the person who had entered the bedroom earlier that morning. Both Nancy and Cindy were acquainted with defendant, whom they called "Dickie," and were friends of his younger sister. Defendant, then 18, had been employed by the girls' mother to babysit with them on previous occasions.

Defendant testified in his own behalf that he had been driven home from his job as a janitor by his employer,

Robert Velasquez, and that he had arrived at his Harding Avenue residence between 5:00 and 5:30 A.M. He denied having been in the Lemke home at any time that morning.

Defendant was convicted under section 11—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 11—3(a)), which provides:

> "Sec. 11—3. Deviate Sexual Assault. (a) Any person of the age of 14 years and upwards who, by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct commits deviate sexual assault."

"Deviate sexual conduct" is defined in the preceding section of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 11—2), thusly:

> "Sec. 11—2. Deviate Sexual Conduct. 'Deviate sexual conduct', for the purpose of this Article, means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another."

Defendant argues that there has been no evidence introduced tending to prove either "force or threat of force," as required by the statute. To this contention the State responds that because of the great disparity in physical size and age between defendant and Nancy Lemke that a threat of force was implicit in his actions. The State stresses that the victim's age made her legally incapable of consent, citing the committee comments accompanying section 11—3: "Thus, protection of everyone from aggression, *protection of children from abuse of their immaturity,* and the protection of the public from open affronts to generally accepted standards of behavior provide the basis adopted for framing the code provisions in this area." (State's emphasis.) (S.H.A., ch. 38, par. 11—3, p. 369.) However, a more complete citation of these comments demonstrates that they are addressed generally to the several Criminal Code sections dealing with deviate sexual conduct and not to section 11—3 in particular. The material immediately preceding the quoted passage outlines the statutory scheme concerned with deviate sexual

activity: "The three approaches to deviate sexual conduct are generally as follows: First, compelling another to engage in a deviate sexual act is, as in rape, a unique kind of battery and as such is deserving of criminal punishment (sec. 11—3). Second, similar conduct involving a child is likewise proscribed on the same grounds as are other acts which sexually victimize the immature (secs. 11—4 and 11—5). Third, deviate sexual acts, and certain acts preliminary thereto, performed in such a place that they have an immediate and disturbing impact upon the public generally, are proscribed (sec. 11—9)." (P. 369.) The comprehensive plan devised by the legislature to proscribe various forms of aberrant sexual conduct reserves only to those situations involving actual or threatened force imposition of a strict penalty without provision for affirmative defense. This is in clear contrast to those sections providing either lessened penalty or particular affirmative defenses, which sections are based on a nonviolent victimization of the young. The evidence presented in this case supports neither a finding of actual force nor threat of force; nor does testimony of the complaining witness establish the fear or coercion suggested by the State. In the absence of such proof, a conviction under section 11—3 cannot stand, and we accordingly reverse the conviction for deviate sexual assault.

The remaining burglary conviction necessitates consideration of defendant's other allegations of error. He complains of certain testimony at trial which he asserts was prejudicial hearsay. On cross-examination by defense counsel, Cindy Lemke responded to the following question:

"Q. A top floor upstairs? Now, what happened after Dickie left? What did you do?

A. I got up. My dad got up and Nancy told my dad that Dickie was in our bedroom, and my dad said, 'Maybe we've been robbed.' "

Counsel made no motion to strike the answer and may not now complain. (*People v. Henry* (1954), 3 Ill.2d 609,

*614.*) Defendant contends that the following exchange on direct examination between counsel for the State and Nancy Lemke was likewise hearsay:

> "Q. Did you talk to your parents about this, the next day?
> A. Yes."

Again no objection or motion to strike was made by the defense and we will not consider whether it constitutes an inadmissible hearsay statement.

Defendant next argues that he was entitled to representation by an attorney when he was brought to Nancy's home by the police on the morning of July 19, 1967. However, the right to counsel at lineup attaches only after the initiation of adversary judicial criminal proceedings. *Kirby v. Illinois (1972), 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.*

Finally, the defendant contends that the in-court identification of him by Nancy Lemke was a result of their confrontation on the morning of his arrest. With this we cannot agree. The Lemke girls were well acquainted with defendant prior to the events of July 19 and their opportunity to observe him was substantial. Where the person identified is known to a witness prior to the crime, the identification by that witness is not influenced by any pretrial confrontation. *People v. Robinson (1969), 42 Ill.2d 371, 375; People v. Nelson (1968), 40 Ill.2d 146, 151.*

The judgment of conviction for burglary is affirmed.

*Reversed in part and affirmed in part.*

MR. JUSTICE SCHAEFER, dissenting:

In order to find the defendant guilty of any of the offenses with which he was charged, it is necessary to believe beyond a reasonable doubt that early on a July morning when it "was not really dark outside," but was "starting to get light," the defendant used a small ladder to climb through a window into the home of a neighboring family, all of whose members knew him, and that once

inside he walked through the house, moved the father's trousers from the dining room to the kitchen where he threw them on the floor; that he then went into the children's bedroom where he remained for ten minutes and performed the sexual acts upon Nancy while Cindy sat up in the same bunk bed and watched, and that when he left he stole the father's watch and electric razor, as well as money from the wallets of both the father and the mother. The story is inherently improbable, and its improbability is underscored by the existence of serious contradictions in the testimony of the prosecution's witnesses.

Nancy testified that the defendant had never "done anything to her before," and that on the occasions when he had served as baby sitter for her and her brother and sisters, he had watched television while they were in bed. She was then asked about the defendant's brother, Robert:

> "Q. Has Robert ever done anything to you?
> A. Yes.
> Q. What did Robert do to you?
> A. Well, I went to call them and then the girls weren't home, they went to the show. And he was home, and his sister, Sue, was down in the basement with her girlfriend. And he had a hold of my stretch pants between my legs. And he says 'Why are you covering your legs?' And I said, 'I have a cold.' And he said 'Let me see your peach,' and I says no. Then he said, 'Can I feel it?' I said no. And then he did."

Nancy testified that she told her mother what Robert had done to her. But her mother denied that she had done so.

Nancy testified that after the defendant left, "I just hollered 'Cindy come down by my side and sleep with me.' She said all right, and she did. We fell asleep." But Cindy testified that she did not go back to sleep. And in response to the question, "Did Nancy go back to sleep," she answered: "No. She said, 'Stay up, Cindy, because there might be somebody in the house.'"

When Nancy was asked, "*** have you ever talked to

your mother about what you were going to say here in court?," she answered, "Not all the time."

"Q. About how many times would you say you have talked to her?

A. Ten."

Nancy's mother was asked, "Did you ever talk to them about what their testimony would be in court?" She answered: "No, I did not. I did let's say ask them once or twice shortly after it happened, to see if they would come up with the right thing again, and they did not change their story."

"Q. To see if they would come up with the right story?

A. If they were coming up with the right thing.

Q. Now, did you talk to Nancy about ten times about what her testimony would be here in court?

A. No. I wouldn't say I did. It has been revealed [sic] [reviewed? - repeated?] in front of her. But as far as talking to her on it, no."

Even without considering the testimony of the defendant's employer and the members of the defendant's family, I am not satisfied that the defendant was proved guilty beyond a reasonable doubt of any offense.

MR. JUSTICE DAVIS, also dissenting.

I dissent from the majority opinion insofar as it reverses the conviction for deviate sexual assault. The initial question is whether the facts outlined in the majority opinion, under the law, constitute "force or threat of force" under section 11—3(a) of the Criminal Code. Ill. Rev. Stat. 1967, ch. 38, par. 11—3(a).

I do not view the use of the word "force" in the statute to necessarily mean that there must be actual or physical violence. Rather, "force" includes the compulsion of any other person to perform or submit to any act of

deviate sexual conduct where the person submitting is incapable of consenting thereto; it denotes lack of consent. Whether such force is present must be determined in each case by the nature of the particular facts involved. (*People v. Smith (1965), 32 Ill.2d 88, 92.*) In this case the victim was a seven-year-old child; she was awakened from sleep by a young man, 18 years of age, whom she knew as a neighbor and baby-sitter. The tender age of the victim, coupled with the fact that the defendant had been associated with the victim and her family as a neighbor and baby-sitter, and had exercised a type of parental control over her, was sufficient to establish force by intimidation and the legal incapacity of the victim to consent.

In *People v. Riley (1967), 84 Ill. App. 2d 296,* a seven-year-old girl had been raped by a man who was a friend of the family. The evidence indicated that the defendant had been playing cards with the prosecutrix, her sister and brother. The defendant then asked the prosecutrix to go to the store with him. Instead, he took her to another house, asked her to lie down, and then had intercourse with her. Later, she tried to run away and the defendant caught her and hit her. In answer to defendant's challenge that the evidence did not establish the use of force, the court, on page 300, stated:

"To affirm a finding of forcible rape there must be evidence that the act of intercourse was performed forcibly and against the will of the prosecutrix. *People v. Faulisi, 25 Ill.2d 457, 185 N.E.2d 211,* or otherwise stated, without the consent of the prosecutrix. *People v. Fryman, 4 Ill.2d 223, 122 N.E.2d 573.* The girl was seven years old, much below the age of consent, and is conclusively presumed to be unable to legally consent to an act of carnal knowledge. *Addison v. People, 193 Ill. 405, 62 N.E. 235.* A seven-year-old girl cannot be expected to understand the nature of the act, let alone possess the will to

resist against a friend of her parents. Force is always present in an act of intercourse between a seven-year-old female, incapable of consenting or resisting, and a thirty-one-year-old male."

I believe that *People v. Riley* is indistinguishable and correctly interprets the meaning of the word "force" under the factual background of both that, and this, case. The fact that here the defendant committed a deviate sexual assault, as opposed to the intercourse in the *Riley* case, does not make the rationale of *Riley* any less persuasive or dispositive. The defendant contends that the quoted language from *Riley* is unnecessary to the decision in that actual force was present in *Riley*. That is not true. The force in *Riley, i.e.,* hitting the prosecutrix, occurred after the rape had taken place.

The State should properly have brought the charges under section 11—4 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 11—4), entitled "Indecent Liberties with a Child." Article 11 of the Criminal Code of 1961 deals with sex offenses. The Committee Comments indicate that the legislature specifically sought to protect the young and immature from sexual advances of older persons by the language found in sections 11—4 and 11—5. Section 11—4 provides in part:

"(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:

* * *

(2) Any act of deviate sexual conduct; or ***"

As pointed out by the majority, there are certain affirmative defenses available under section 11—4, which are not available under section 11—3. They are:

"(b) It shall be an affirmative defense to indecent liberties with a child that:

(1) The accused reasonably believed the child was of the age of 16 or upwards at the time of the act giving rise to the charge; or

(2) The child is a prostitute; or

(3) The child has previously been married."

It is conceded that the defendant in this case was over the age of 17 years and the complaining witness under the age of 16 years, namely 7. Not one of the affirmative defenses available under section 11—4 has any possible application to this case. The penalty which may be imposed under section 11—3, the section under which the charge was brought, is less than that which may be imposed under section 11—4. Under these circumstances the failure of the State to prosecute under the more appropriate statute would not be prejudicial error.

Were the age requirements for "statutory" force not present, or were there any possibility that the affirmative defenses under section 11—4 were available, I would not then uphold a conviction without a showing of force under the standards referred to in *People v. Faulisi (1962), 25 Ill.2d 457, 461.*

I do not agree with the majority that the present statutory scheme and committee comments thereto command that actual or threatened force must mean something greater than the "statutory" force as described in *People v. Riley.* Section 11—1, relating to rape, requires that the act be "by force and against her will." Section 11—3, relating to deviate sexual assault, requires that the act be "by force or threat of force." The committee comments to section 11—3 state that the section "is intended to state generally the equivalent of the force requirement in rape." The statute relating to rape specifically provides that the phrase "by force and against her will" includes:

"(1) Where the female is unconscious; or
(2) Where the female is so mentally deranged or deficient that she cannot give effective consent to intercourse."

I do not find in the foregoing statutory examples the suggestion of actual or violent force which the majority seems to find necessary. Rather, the statutory examples seem to me to be in accord with the "statutory" force found in *People v. Riley,* wherein it was said, "A seven-year-old girl cannot be expected to understand the

nature of the act, let alone possess the will to resist against a friend of her parents. Force is always present in an act of intercourse between a seven-year-old female, incapable of consenting or resisting, and a thirty-one-year-old male."

Likewise, I believe that force was present under the circumstances of this case. I would affirm the conviction for deviate sexual assault.