**People of the State of Illinois, Defendant in Error, v. David Sanders, Plaintiff in Error.**

**Gen. No. 50,952.**

First District, Fourth Division.
March 10, 1967.

John F. Dobler, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick Murphy, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED
Rape.[1]

JUDGMENT
After a bench trial, defendant was found guilty and sentenced to a term of twenty years.

---

[1] The pertinent parts of the statute in effect at the time in question provided:

Rape is the carnal knowledge of a female, forcibly and against her will. . . . Every person convicted of the crime of rape shall be imprisoned in the penitentiary for a term not less than one year and may extend to life. Ill Rev Stats (1959), c 38, § 490.

POINTS RAISED ON APPEAL [2]

(1) The evidence did not establish defendant's guilt beyond a reasonable doubt.

(2) A variance between the indictment and the evidence adduced requires reversal.

**Testimony of State Witnesses**

*Catherine Wells*

On the 13th of March, 1961, between 10:30 and 11:00 p. m., while waiting for a bus on the corner of Kedzie and Douglas Streets in Chicago, she was grabbed around the throat from behind, pulled backwards into a passageway below the bus stop, and cautioned not to "holler." Once in the passageway she observed "two other boys" in addition to her assailant. The three took her pocketbook and change, and demanded to know her name. Then, on signal, a "car was brought up into the alley, and I was pulled out of this alley and pushed in this car." A total of six boys were in the car as it proceeded out of the alley. Defendant was one of the six occupants. She informed her captors that she was forty years of age, married, four and a half months pregnant and the mother of sons as old as they were, but "they told me they didn't want to hear this story." When the car reached a dead-end alley all of the boys but the original assailant, Sam Jones, left the car. Jones ordered her to slide down on the seat of the car and he engaged in an act of sexual intercourse with her. It was then decided by the boys that this was not a desirable location and, after some debate, all of them returned to the car and they proceeded to another location. At this latter destination, Mrs. Wells was pulled from the car by her clothing and arm, called a bad name, and led by Jones down a passageway to a dimly lit basement. In the basement there took place eight separate acts of intercourse

---

[2] This case was transferred here from the Supreme Court where it had been originally filed.

with her by eight different persons. At one point in the ordeal she was asked to drink "peppermint schnapps," but she refused. Defendant was one of those eight attackers. At the conclusion of these attacks, Mrs. Wells was driven to her home by some of the boys. She reported the rapes to her husband, who immediately summoned the police. Approximately a week or eight days after the event, Mrs. Wells was called to the police station to view suspects in a lineup. She there identified some of her attackers, but defendant was not in the lineup.

*Jeriel K. Howard*

He was the police officer who placed defendant under arrest for sex investigation.

### Testimony of Defendant's Witnesses

*Sam Jones*

The arrangement with Catherine Wells was not forced, as she became friendly when she observed that Jones had ten dollars. She willingly complied with his request that she purchase a half pint of peppermint schnapps and accompany him and his friends to a certain location. There, Jones, Johnnie Walker and Willie Lee Dean had intercourse with Mrs. Wells. Defendant was not there and did not have intercourse with her. On cross-examination, however, Jones admitted that in an oral statement taken in the office of the State's Attorney on March 14, 1961, he had stated that defendant had been among those present at the event in issue and had had intercourse with Mrs. Wells. This statement by Jones was also impeaching of his testimony that no force was exerted on her.

*Johnnie Walker*

He had intercourse with Catherine Wells at the time and place in question, but it was not against her will. This testimony was also impeached by the introduction into evidence of an earlier statement by Walker in which he indicated that force had been used.

455

## OPINION

■ Defendant contends that he was not one of the eight men who participated in the rape of Mrs. Wells. However, testimony of the prosecutrix is to the contrary. She positively identified defendant, first, as one of the men in the automobile which carried her away from the bus stop, and, second, as one of the men who engaged in sexual intercourse with her in the basement. While Sam Jones testified that defendant was not present at the multiple rape episode, this testimony, as indicated, was not only contradicted by Mrs. Wells, but was also impeached by his prior inconsistent statements. Further, the identification testimony is strengthened by the surrounding circumstances, there having been adequate time and sufficient lighting in the basement for prosecutrix to observe the appearance and to determine the identity of the men who raped her. Although uncorroborated by the testimony of other State witnesses, the testimony of the prosecutrix was clear and convincing, and therefore is sufficient to support a conviction. People v. Mack, 25 Ill2d 416, 420, 185 NE2d 154; People v. Walden, 19 Ill2d 602, 608, 169 NE2d 241; People v. Gardner, 61 Ill App2d 326, 335, 210 NE2d 545.

■ Defendant also argues that the prosecutrix was a voluntary participant in the acts of intercourse. We think the record establishes the contrary. In the first moments of her ordeal, Mrs. Wells was grabbed around the throat and pulled backwards from her bus stop into an alley, where she was surrounded by three men. She was then "pulled out of this alley and pushed in this car" where she found herself surrounded by six men. Once in the basement she testified that "[t]hey had taken my shoes off, tore my skirt off of me." True, her testimony does not describe active physical resistance at the time Jones had intercourse with her alone in the car, but the fact that five other assailants stood

456

just outside the car must be considered. The same situation existed during the basement assaults where seven other assailants were present at all times in the immediate area. We also find substantiation on the question of involuntariness in the fact of Mrs. Wells' prompt report of the attack to her husband and the police.

We think it reasonable that a forty-year-old woman, pulled off the public sidewalk and thrown into the unfriendly company of six to eight strangers, under all the circumstances of this case, would find her will to resist overcome. People v. Finley, 22 Ill2d 525, 529, 177 NE2d 149. Evidence of the sudden abduction and aggressive method in which Mrs. Wells was taken from street to alley to car to basement by her several assailants indicates that her active resistance would have been futile and was therefore unnecessary to sustain the conviction. People v. Faulisi, 25 Ill2d 457, 461, 185 NE2d 211. In this context, we cannot say that the evidence is so improbable or unsatisfactory as to leave a reasonable doubt as to defendant's guilt. People v. Henson, 29 Ill2d 210, 214, 193 NE2d 777.

Defendant's contention of a fatal variance in dates between the indictment and the proof adduced is not well founded. It is true that the date of the offense as recited in the indictment was March 7, 1961, and the prosecutrix was asked to relate what occurred on March 13, 1961. However, the indictment and the evidence move into accord later in Mrs. Wells' testimony where she states that she was called to the police station on the 13th or 14th of March to identify her attackers, and that this was "[a] week or eight days" after the rape. Further, direct examination by defense counsel of Sam Jones and Johnnie Walker clearly fixes the night of the rape at March 7, 1961, even though the date of March 2, 1961, appears on cross-examination of Jones.

While the record we have before us does indicate that defendant was under a separate indictment [3] for rape committed on March 12, 1961, as well as the March 7, 1961 rape, the record also discloses that Catherine Wells was involved only in the rapes perpetrated on March 7, 1961. The State's case, including the positive identification of defendant, is based on testimony of the complaining witness, and her testimony necessarily relates to the enormities committed against her, without regard to any other crimes allegedly committed by defendant involving other victim(s). Even if there were a clear variance as to time between the indictment and the evidence, reversal would not be required. As was stated in People v. Schmidt, 10 Ill2d 221, 227–228, 139 NE2d 726:

> Every indictment must allege the commission of the offense on a certain date prior to the return of the indictment, which must be within the time fixed by law for the prosecution of the offense. It is not necessary, however, to prove the precise date as alleged unless the allegation of a special time is an essential ingredient of the crime or the running of the statute of limitation is involved. A slight variance as to the dates is immaterial. . . .

See, also, People v. Rohde, 403 Ill 41, 44, 85 NE2d 24. The date is not an "essential ingredient" of the crime of rape and there is no limitation problem in the instant case.

The judgment of the trial court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.

---

[3] In that indictment defendant and others were found guilty of raping Patricia Duminie on March 12, 1961, and defendant was sentenced to a term of thirty-five years. Appeal from that conviction is pending.