(No. 22902.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK POLAK *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1935—Rehearing denied June 11, 1935.*

JOHN J. RERICHA, and EUGENE L. McGARRY, (ELWYN E. LONG, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and AMOS P. SCRUGGS, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Frank Polak and Harry Kmak, otherwise called Harry Kushemba, (hereinafter called the defendants,) were found guilty in the criminal court of Cook county by the verdict of a jury of having committed rape upon Sylvia Drank, a female twenty-one years of age, and the punishment was fixed at one year in the penitentiary. To reverse the judgment entered on the verdict the defendants bring the record here for review on writ of error.

The acts of sexual intercourse are admitted by the defendants. They contend that such acts were not forcible and against the will of the prosecutrix and did not constitute the crime of rape.

The prosecutrix had been in the employ of the Illinois Bell Telephone Company in its general office for a period of six years immediately prior to the commission of the alleged offenses. She lived with her mother and sister and had been acquainted with the defendants for a period of four years, during which time she and her sister had about once a month gone with the defendants on automobile rides and to different places of amusement. The defendant Kmak usually accompanied the sister. About 9:30 P. M. of July 24, 1934, the defendants came in a Cadillac automobile to the home of the prosecutrix. The sister was attending a club meeting. A cousin, Bernice Noeth, was at the Drank home. The defendants invited Sylvia and her sister to go for a ride. Sylvia and Bernice Noeth went with the defendants to the club meeting where the sister was in attendance. She declined the invitation. From the club the parties went to the Noeth home, where the Noeth girl changed her clothes for beach pajamas. The prosecutrix was dressed in a bicycle suit. The two couples then proceeded to Fifty-fourth street and the lake and there rented two bicycles and rode until about 11:00. The weather was very warm. On leaving the bicycle stand

the parties rode for a time in the automobile and then stopped at a beer tavern, where they remained until about 1:00 A. M., during which period, according to the testimony of the prosecutrix, they each had two glasses of beer. From the tavern the Noeth girl was taken home. The defendants and Sylvia returned to the tavern, where they each had another glass of beer. When they left the tavern on the last occasion Kmak was driving the automobile. The prosecutrix and Polak were in the rear seat. The prosecutrix stated that Kmak drove on Western avenue in the direction of her home, but failing to turn on Thirty-fifth street, which was the street usually taken from Western avenue to her home, she asked where they were going, and one of the defendants said, "Well, we are going to take a ride," and she said, "It is warm; we can go just for a little ride, but I have to get up for work in the morning, so make sure we don't stay out too late." She stated the automobile was driven south on Western avenue to Seventy-fourth street, where she suggested the three persons ride in the front seat of the car, but the defendant Polak objected. Later Polak began taking liberties with her, to which she remonstrated. She pushed him away from her and called to the defendant Kmak, "Turn around and look what Frank is doing." Kmak replied, "Well, I can't do anything about it." She further testified that Polak persisted in his advances, grabbed her, pulled her towards him and tore her clothing; that she began screaming and continued screaming; that the car at this time was somewhere out in the open prairie; that Polak struck her in the left jaw; that she told him to stop, but he again struck her and hit her altogether about four times in and about the face; that by this time she was exhausted; that the struggle lasted about fifteen minutes, and that he threw her on the seat and had intercourse with her. She then asked to, and did, get out of the car, the defendants both getting out at the same time. She testified that there were

no houses around and no automobiles in sight. She saw no chance to escape and so told the defendants to take her home. When she got in the automobile Kmak got in with her and Polak took the driver's seat. She was crying. Kmak told her not to cry, and Polak told her that if she did not shut up he would shoot her. Kmak then opened his pants. She told him not to do that, and asked him if it was not enough that Frank had taken advantage of her. Kmak made no reply but pushed her over. She tried to push him away and screamed loudly but was so exhausted and dazed she could not keep Kmak off of her, and he forcibly pulled her legs apart and had intercourse with her. The defendants then took her to her home, arriving there about 3:00 A. M. She immediately reported to her sister and mother what had happened and the mother called Dr. Braune. The mother testified that she saw Sylvia about 3:00 A. M. at her home; that Sylvia was crying, a lip was bleeding, her left eye and the side of her left jaw were swollen, her clothes were torn, and there was blood on the bottom part of her clothing. The prosecutrix testified that she had never had sexual relations with the defendants or with any man prior to July 25.

Dr. Braune testified that he saw the prosecutrix at her home about 8:00 A. M. on July 25; that he was not able to go to her home when he was first called; that on that occasion he made an examination of her private organs; that he found the parts torn, lips of vagina torn, hymen ruptured, scratches on labia and blood on her undergarments. He stated that in his opinion the injuries above described had been inflicted about four hours prior to his examination of the parts. He also testified that the patient's left eye and the left side of her face were swollen, the neck was swollen just under the jaw, and the next day these injuries about the face and neck were discolored. The clothing worn by the prosecutrix at the time of the alleged assault was offered in evidence.

Each defendant is twenty-two years old. Each testified in his own behalf and each denied categorically that he had used any force or threats towards the prosecuting witness at the time he had intercourse with her. They corroborated the prosecutrix as to the ride, the places visited and the length of time spent at each, and that the prosecutrix and the sister had kept company with them for the period above mentioned. They denied that the acts of intercourse took place in a sparsely settled part of the city and denied they were south of Seventy-fourth street. The defendants claimed that the prosecutrix drank more than she said she did, and Polak said that he and the prosecutrix each had a drink of hard liquor. Each claimed the prosecutrix stumbled that night and fell into the car and thereby received the injuries to her face. Without going into the disgusting details as related by the defendants of the circumstances leading up to the acts of intercourse, it is sufficient to state that each denied he used any force or threats towards the prosecuting witness at the time he sustained sexual relations with her, and each claimed, in substance, that such sexual acts were not only committed with her consent but that she encouraged the defendants in such illicit acts. Each also claimed that prior to July 25 he had had intercourse with her.

The testimony of Sylvia Drank and the two defendants is in hopeless conflict. In cases of this nature there are ordinarily no eye-witnesses, and direct evidence, aside from that of the interested parties, is generally not to be had. The circumstances surrounding the charge are usually potent factors in determining the guilt or innocence of the defendants. If the testimony of the prosecutrix here is credible she resisted the attempts to have intercourse with her until she was exhausted and such acts of intercourse were committed by force and against her will. If the testimony of the prosecutrix is clear and convincing it is not necessary that she be corroborated in order to

sustain a conviction. (*People* v. *Sciales,* 345 Ill. 118.) Here the uncontradicted testimony of the injuries to the private parts of the prosecutrix and her torn and bloody clothing are facts which were before the jury and tended strongly to corroborate the testimony of the prosecutrix. The decision whether the prosecutrix or the defendants told the truth was the primary function of the jury. It is apparent the jury in the discharge of that function believed the prosecutrix and not the defendants. There is no claim that the jury were swayed by improper arguments, or that any improper methods were used in the course of the trial which were calculated to, or did, inflame the minds of the jury against the defendants. The jury, acting within the province committed to it, has passed upon the credibility of the witnesses and has determined the weight of the evidence. Unless this court can say, upon review of the whole record, that the verdict is manifestly contrary to the weight of the evidence the verdict of the jury will not be disturbed. (*People* v. *Fitzpatrick,* 359 Ill. 363; *People* v. *Sciales, supra; People* v. *Marx,* 291 Ill. 40.) We cannot on this record hold that the verdict of the jury was not justified.

It is urged that the court erred in refusing to adopt four suggestions in certain instructions requested by the defendants. These are identified as instructions 1 to 4 in the abstract. Instruction 1 was quite argumentative, and the trial court was correct in refusing to give such instruction. Instructions 2, 3 and 4 were fully covered in the charge given to the jury.

Lastly, it is urged that the trial court in its charge to the jury erred in its definition and exposition of the presumption of innocence and in its exposition of the elements necessary to be proved in order to authorize a conviction of rape. The record fails to show any objections to these phases of the narrative instructions made before the jury retired, or any order made by the trial court be-

fore the jury retired from the bar allowing further time for the making of such objections, as required by rule 27 of this court, construed in conjunction with section 67 of the new Civil Practice act. (Smith's Stat. 1933, chap. 110, pp. 2189-90; Cahill's Stat. 1933, chap. 110, p. 2158.) The action of the trial court in giving instructions against which complaint is made is not properly preserved for review and this court is without authority to pass upon the correctness of such instructions. *People* v. *Peck,* 358 Ill. 642.

The defendants had a fair trial. No error prejudicial to their rights was committed against them, and the judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*