(No. 36030.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS QUALLS *et al.*, Plaintiffs in Error.

*Opinion filed January 20, 1961.*

JEWEL STRADFORD ROGERS, of Chicago, for plaintiffs in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendants, Louis Qualls and Matthew C. Moore, were jointly indicted in the criminal court of Cook County on a charge of rape. They pleaded not guilty, were tried before a jury, found guilty and upon judgment on the verdict were sentenced to imprisonment in the penitentiary for a term of 25 years. The case is before us on writ of error.

The defendants contend that the prosecution failed to prove the guilt of defendants beyond a reasonable doubt;

that there was error in giving a certain instruction; and that there was no proof of the use of force or of lack of consent. The State insists that the defendants were found guilty beyond a reasonable doubt and that the instructions were proper and the defendants received a fair trial.

The principal witnesses for the State were the complaining witness; her mother-in-law; a police woman, Lavinia Stewart; and two policemen, Arnett Holmes and Raymond Krall. The defendants testified on their own behalf and presented a number of character witnesses. The prosecutrix is white. The two defendants are Negroes. We mention this only because of certain testimony which will be discussed later.

The complaining witness and the two defendants were the only witnesses to the occurrence, and there is considerable variance in their testimony. The facts upon which there is no disagreement are that on April 25, 1959, about the hour of 2:45 A.M. prosecutrix encountered the defendant Qualls at 39th Street and Cottage Grove Avenue in the city of Chicago. They walked about six blocks to 39th Street and South Park Avenue where Qualls hailed a cab. They rode in the cab to 63rd and Kimbark, a distance of more than two miles. They got out of the cab and walked about half a block to the defendants' apartment. They entered the building, walked up a flight of stairs to the first floor apartment, and encountered Moore at the door. Moore said "hello" and walked into the kitchen. All three had coffee and sometime during the visit the prosecutrix disrobed. Both Qualls and Moore engaged in sexual intercourse with her. After the acts of intercourse, she entered the kitchen nude and drank some coffee. She took a bath in the apartment and left about 7:00 A.M. Moore gave her fifty cents for bus fare.

The complaining witness testified that she and her husband stopped at 39th and Cottage Grove to buy something to eat; that the restaurant was closed and they entered a

tavern; that they left the tavern and sat in their car, and that two unidentified Negroes (not the defendants or either of them) approached the car and demanded money; that her husband jumped out of the car and ran away; that about this time Qualls walked up to the car and offered to take her to her husband. The complaining witness and Qualls walked several blocks to a cab. Qualls said he had a knife. In the cab Qualls displayed the knife. When they entered the apartment Qualls ordered her to take off her clothes. He put the knife on the dresser. Both Qualls and Moore engaged in intercourse four or five times between 3:00 A.M. and 4:30. They sat in the kitchen (the complaining witness nude) and drank coffee, after which each man again engaged in intercourse with her. She then accepted fifty cents from Moore, left the apartment, took a bus to her home, and upon arriving there told her mother-in-law that she had been kidnapped and raped. She then went to a police station and upon her complaint officers Stewart, Holmes and Krall went to the apartment on Kimbark and arrested the defendants.

The defendant Qualls testified that he had bought some barbecued ribs at a restaurant and thereafter entered a tavern, where he encountered prosecutrix and her husband, identified by her, however, as her cousin. The husband said he needed money to settle a debt with two other men in the tavern, and suggested that the complaining witness would go with Qualls for money. Qualls paid the husband seven dollars, and left the tavern with the complaining witness. Outside the tavern there was a verbal altercation between two men and prosecutrix's husband. The two men told Qualls to move along. He walked with the complaining witness to South Park, where they took a cab to Kimbark. At no time did the complaining witness protest, but she accompanied him willingly. When they entered the apartment the complaining witness disrobed, and there ensued one act of intercourse. The complaining witness then en-

tered the kitchen, nude, and sat drinking coffee for half an hour. She then engaged in intercourse with Moore. Qualls went in the bathroom, and the complaining witness entered the bathroom and stepped in the tub with him.

The defendant Moore testified that he was in his shorts when Qualls and the complaining witness came to the apartment, that he put on trousers, and sat in the kitchen reading, while Qualls and the complaining witness came into the kitchen, nude, and after drinking coffee, proposed to Moore that he enjoy her favors, which he did. She asked for money, but Moore told her that his pay check had been garnisheed, and he was broke. The complaining witness then took a bath, and left about 7:00 A.M. Shortly before she departed Moore left the apartment and bought her a package of cigarettes.

Both defendants categorically deny the use of any force whatsoever, although they both admit that each once engaged in sexual intercourse with the prosecuting witness.

The mother-in-law of prosecutrix testified that the prosecuting witness entered her apartment between 7:00 and 8:00 in the morning and said she had been kidnapped and raped by two colored men.

Lavinia Stewart, police woman, testified that she saw prosecutrix at a police station and accompanied her, with officers Krall and Holmes, to an apartment at 6241 Kimbark. When this group entered the building, Moore was coming down the stairs. He was arrested, and they all entered the apartment, where Qualls was in bed. The witness accompanied the prosecuting witness to Michael Reese hospital, remained there a few minutes, (the prosecutrix was not examined,) and then returned to the Prairie Avenue station.

Raymond Krall, police officer, accompanied the prosecuting witness to the Kimbark address, with officers Stewart, Goebel and Granata. The prosecuting witness confronted the two defendants, who said nothing. The officer was

present at a police "lineup," at which time the husband of the prosecuting witness identified Qualls as the man who came up to his car at 39th and Cottage Grove. Apparently the prosecuting witness did not make any identification at the lineup.

Arnett Holmes, police officer, testified that he drove the prosecuting witness to the Cook County Hospital in the afternoon and left her there. The prosecuting witness did not discuss the case with him or his partners at any time.

It is noteworthy that prosecutrix's husband was not called to corroborate her testimony, although he was present in the courtroom.

Reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases. (*People v. Kazmierczyk*, 357 Ill. 592.) It is the further duty of a reviewing court, where a verdict is returned by a jury in a criminal case, not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. *People v. Abbate*, 349 Ill. 147.

We are constrained to say, after a careful reading of the entire record, that the testimony of the prosecuting witness lacks verisimilitude. In such instance the evidence of a prosecutrix should be corroborated by some other testimony, fact or circumstance. (*People v. Hiller*, 7 Ill.2d 465.) There is no corroboration of the material elements of force, and lack of consent.

The prosecuting witness testified that she was afraid, but her actions belied her statements. At no time did she make any outcry. She did not say anything to the cab driver, "because he was colored too." Yet the evidence is that the tavern, in which or in the vicinity of which she first encountered Qualls, was patronized almost entirely by Negroes. Also, she consented to walk with Qualls from her car and was not afraid of him at that time. The claim

that the prosecuting witness was afraid at any time appears questionable.

There was a telephone in the apartment, and although it appears that the prosecuting witness was alone in the room where the telephone was located, there is no indication that she attempted to use it. There is no testimony that the prosecuting witness attempted to flee the apartment although she was in the bathroom, which was opposite the front door, and only a few feet from it. Thus, she not only failed to make resistance, but she failed to avail herself of an obvious opportunity to escape, if such was her desire.

While there is testimony by the prosecuting witness that Qualls struck her, which is denied by both defendants, this striking, according to her testimony, was not at the time of any act of intercourse, but subsequently, at the time she wanted to leave the apartment. There was no evidence of any other use of force, nor of bruises, marks, abrasions or contusions upon her body. There was no testimony by any examining doctor. In *People* v. *Scott*, 407 Ill. 301, we said: "It is a fundamental rule in such cases that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will." This record affords no such proof.

The prosecuting witness did not testify that Moore used any force, or that he knew that Qualls had struck her. The People tendered an instruction, which was given over the defendants' objection, concerning an accessory, which indicates the theory upon which the People hoped to convict Moore. To justify the conviction of both defendants on a joint indictment, there must be proof of a concert of action (*People* v. *Richie,* 317 Ill. 551) and there is no such proof here.

The People offered an instruction, which was given over objection, that physical force is unnecessary if the prosecuting witness is paralyzed by fear or overcome by the superior strength of her attacker. The evidence does not show that she was paralyzed by fear, or that she was overcome by superior strength, and we think the instruction was not justified in the light of this record.

The elements of the crime of rape are contained in the case of *People* v. *Eccarius,* 305 Ill. 62, where a similar instruction was disapproved. Needless to say these elements must be proved beyond a reasonable doubt. From a careful examination of the entire record in the case at bar, we do not believe that the evidence is sufficient to prove defendants' guilt beyond a reasonable doubt.

We cannot permit the verdict to stand, and in the light of the evidence, no good purpose could be served by a new trial. The judgment of the criminal court of Cook County is therefore reversed.

*Judgment reversed.*