People of the State of Illinois, Plaintiff-Appellee, v. Edgar Lee, Jr. (Impleaded), Defendant-Appellant.
People of the State of Illinois, Plaintiff-Appellee, v. Roy Gustus, Defendant-Appellant.

Gen. Nos. 51,314, 51,315.

First District, First Division.

May 27, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael C. Zissman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a two-count indictment, defendants were charged with rape and aggravated kidnaping. After a bench trial, they were both found guilty of both charges. Defendant Lee received separate sentences of 2 to 7 years on both counts, to be served concurrently. Defendant Gustus received separate sentences of 2 to 5 years on both counts, to be served concurrently. On appeal, defendants contend they were not proved guilty beyond a reasonable doubt. Defendants' separate appeals, Nos. 51,314 and 51,315, are consolidated in one opinion for convenience.

The undisputed facts show that about two o'clock in the morning of December 9, 1965, Mrs. Jessie Carlisle parked her car in front of her mother-in-law's house at 1707 Washington Boulevard, Chicago. The complaining witness, Mary Glenn, and her husband, John Glenn, were with her. Mrs. Carlisle and Mr. Glenn went upstairs to pick up the Carlisle children, while Mrs. Glenn remained in the car with the motor running. She didn't feel well, and she could keep warm for the short time they were to be gone. While Mrs. Glenn dozed in the front passenger seat, the two defendants, Edgar Lee, Jr., and Roy Gustus, entered the car and drove off with Mrs. Glenn, whom they had never met before.

Mrs. Glenn testified she asked the defendants what they were doing, and they told her to keep quiet. Gustus

threatened to kick in her face. After they drove for a few minutes, she told them she had to go to the washroom and asked them to pull over to a filling station, which they refused to do. Later, they stopped in a parking lot of a housing project at 2245 Lake Street and let her out. While she was urinating, Police Officer Jackson came up and inquired what she was doing, and she told him. She then told Officer Jackson that Lee and Gustus had stolen the car. The officer questioned the defendants and opened the trunk of the car. Mrs. Glenn begged him to take her home, and he refused to do so and left in a squad car.

After the officer left, Mrs. Glenn ran over to the housing project, screaming and shouting. The defendants pulled her into an elevator and "punched the button. I was down on the floor of the elevator. . . . One of them hit me in the mouth. They had their arms around my mouth, mugging my mouth, because I was hollering and telling them to leave me alone. Lee said, 'We're not going to hurt you.' He kept pulling me until they got me inside and had me in the elevator. . . . I couldn't kick; I couldn't holler because he had his hand over my mouth. I was fighting, but I couldn't hit anybody. Lee hit me in the mouth outside the elevator, I don't know how many times. I had a bump on my head from them dragging me by the stair steps."

Mrs. Glenn was dragged to the top of a stairway, where Lee pulled down her undergarments, and both of them had sexual intercourse with her. A written statement given to the police immediately after the affair included: "This man Lee pulled my pants off and then he had Gustus standing in the door listening. Lee finished, Gustus had me, they hit me in the mouth, then I heard some keys rattle, that's when the two men ran. Then two policemen came up the stairs. . . . One went to the stairs and I went downstairs with the other police-

107

man. When we got downstairs or right after that I saw Gustus and Lee again and the police had them. I told the police that these were the men."

Michael Bolton, one of the arresting police officers, testified that when they arrived at the housing project at 2245 Lake Street, they went to the third-floor stairway landing, where they observed Mrs. Glenn. "She was kind of incoherent. She was sobbing, crying, and her pants were down to about knee length. She was bare from the knees up to about the waistline. She said that she had been raped and assaulted by two colored boys. Shortly after she spoke these words, I heard some footsteps on a stairwell which led upward. I went up the stairs to between the fourth and fifth-floor landing. I observed a boy coming down the stairs (indicating Edgar Lee). I accompanied him down the stairway to the third-floor landing, where I asked Mrs. Glenn if this boy was one of the two boys who had raped and assaulted her and she stated yes, he was one of them. I brought him downstairs to the main floor landing, where my partner, Officer Minasola, was standing with another fellow (indicating Roy Gustus). At this time Mary Glenn identified Gustus as the other offender."

On cross-examination, he testified: "Mary Glenn told me two colored boys had raped and assaulted her, struck her on the side of her head and all over her face. That was all she said. I had no further conversations with her or with the two boys."

Another witness for the State, Booker Porter, a police officer, took a written statement from Mary Glenn in the presence of the defendants. "After Mrs. Glenn's statement, Detective Smith had a conversation with Edgar Lee in the interrogation room. Roy Gustus was standing next to him, Mrs. Glenn and Mr. and Mrs. Carlisle and I were present. Detective Smith asked him, 'What happened over there?' He didn't say anything. Detective

108

Smith said, 'I just talked to Gustus out in the hall and he told me that everything that Mrs. Glenn said was the truth and I know all about what happened. Now you tell me what happened.' Lee said, 'Well, everything what she says is just about the truth. We took the car and we went over there. Everything is just about the truth with the exception that I didn't force her to have relations and I didn't hit her.' "

John E. Glenn, husband of Mary Glenn, a plasterer by trade, testified to the events up until the time he left his wife sitting in the car, and that they had been to the American Legion Post, and "she had one beer to drink."

The two defendants testified. They admitted having intercourse with Mary Glenn but insisted it was with her consent. They had seen her sitting in the automobile and invited her to have a drink with them, and she consented. Lee drove the car, and they went to the El Chico Lounge, about two and one-half blocks away, where he parked the car and bought a half-pint of gin. At the parking lot, Mrs. Glenn got out, and they were sitting in the car when Officer Jackson arrived and questioned them. She "drank about a shot or a shot and a half when she got back into the car." She walked into the building and the elevator of her own accord. They also denied admitting the truth of the statement given by Mrs. Glenn at the police station.

Police Officer Jackson testified for the defense and related the parking lot incident, and said, "As I was walking back to the car she asked me to take her home. I told her I couldn't take her home . . . that it is against the rules and regulations, unless it is on official police business. She said nothing to me about the defendants trying to rape her or beat her up or anything else. . . . I noticed no bruises or marks on Mary Glenn while I was talking to her. She appeared to have been drinking."

On cross-examination he said he believed she was drinking because of the way she talked and the way she looked—"I smelled liquor on her breath."

Defendants' first contention is that there was a failure of proof of the essential element of resistance. Defendants argue that the testimony of the complaining witness herself established that she did not resist the two men. Defendants assert that "voluntary submission by the female, while she has power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of rape. . . . In a rape case, where the charge is denied, in order to sustain a conviction, unless the evidence is clear and convincing, the testimony of the prosecutrix must be corroborated by other facts and circumstances in evidence," (People v. Scott, 407 Ill 301, 306, 95 NE2d 315 (1950)), and that "if she had the use of her faculties and physical powers the evidence must show such resistance as to demonstrate that the act was against her will. . . . It is incumbent upon the State to prove such resistance beyond a reasonable doubt. The act of intercourse being admitted, resistance became the gist of the offense charged." People v. Serrielle, 354 Ill 182, 186, 188 NE 375 (1933).

Defendants argue that Mrs. Glenn was 38 years old at the time of the occurrence, 5 feet, 9 inches tall, and weighed 170 pounds. Neither of the defendants was larger than Mrs. Glenn, and they carried no weapons, and she failed to impress Officer Jackson as being in danger. The policeman who found her and took her to the hospital noticed no wounds, scratch marks or bruises on Mrs. Glenn, with the exception of a small cut inside her lip. She walked down the stairs unassisted, after the police came, and none of her clothing was torn. Defendants assert, "Mrs. Glenn's testimony clearly shows her submissive attitude and passive acceptance during the entire episode."

The State contends that an analysis of the testimony shows there was sufficient proof that the acts were by force and against the will of the prosecutrix. The defendant Lee was 22 years old, and Gustus was 20 years old. While both defendants were smaller than Mrs. Glenn, they nevertheless were her physical superiors, and she was suffering from an arthritic condition. Jessie Carlisle and prosecutrix' husband corroborated her testimony that she was not feeling well on the evening in question. Also, Officer Jackson corroborated her statement that she had asked him to take her away and that he had refused.

■ The issue of "failure to resist" or "voluntary submission" must be determined by all the facts and circumstances in each particular case. In People v. Smith, 32 Ill2d 88, 203 NE2d 879 (1965), it is said (p 92):

"There is no definite standard fixing the amount of force required and each case must be considered on its own facts. It is the general rule that if the female has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear."

■ ■ In this case defendants admitted the acts of intercourse and asserted consent. The testimony of the prosecutrix demonstrated such resistance as to show that the act was against her will and under circumstances where further resistance would have been futile and might have brought her physical harm. Corroboration of her unwillingness is found in the testimony of Officer Jackson that she sought his assistance to escape from the defendants and also in the fact that her efforts to resist promptly brought other policemen to her aid. Offi-

cer Bolton described the crying, sobbing and incoherent condition of Mrs. Glenn when he found her and her prompt complaint of rape and identification of both defendants at the scene of the occurrence. We conclude the testimony of the prosecutrix was clear and convincing and corroborated by other facts and circumstances in evidence. We find there is no merit in defendants' contention that they were not proved guilty beyond a reasonable doubt.

█ In a bench trial in a criminal case, the reviewing court, in view of the opportunities for observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to a defendant's guilt. (People v. Woods, 26 Ill2d 582, 585, 187 NE2d 692 (1963).) Applying that test here, we believe the trial court was presented with satisfactory and plausible proof on which to find both defendants guilty of both charges of rape and aggravated kidnaping.

For the reasons given, the judgments of the Circuit Court are affirmed.

Appeal No. 51,314—affirmed. Appeal No. 51,315—affirmed.

BURMAN, P. J. and ADESKO, J., concur.