THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROOSEVELT FLOURNOY, JR., Defendant-Appellant.

(No. 54512;

First District—September 15, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Lee T. Hettinger and James J. Doherty, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas Taubert, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant, Roosevelt Flournoy, Jr., was charged with having committed the crime of rape. After a bench trial, the court found the defendant guilty of the offense as charged and sentenced him to five to ten

years in the Illinois State Penitentiary. On appeal the defendant's contentions are:

(1) That he was not proven guilty beyond a reasonable doubt; and
(2) That he was denied due process of law when physical evidence which was material and favorable to him was destroyed by the police and was no longer available at trial.

The facts are as follows:

Diana Williams, the prosecutrix and first witness called by the State, testified that on January 17, 1969, she got off work at 11:00 p.m. She took a bus to within one block of her home. Moments later the defendant grabbed her from behind and warned her not to scream because he had a knife and would kill her. He then led her to a back porch approximately one block from where he first grabbed her and tied a scarf over her eyes. The defendant pulled down her clothes and had intercourse with her. After the act of intercourse, the defendant again told the prosecutrix to be quiet because if she screamed he would kill her. He led her to a basement a few blocks away. The defendant got sick and vomited and later had intercourse again. Finally, he fell asleep with his arms around the prosecutrix. She did not know how long he slept. She took the blindfold down and spotted an iron rod by the wall. Then she grabbed the rod and opened the door, the defendant woke up and she hit him on the hand. She screamed! He knocked her down and put his hands over her mouth and told her to shut up or he would kill her. The defendant had intercourse with her again.

The prosecutrix further testified that she pleaded with the defendant to let her go. An undetermined amount of time elapsed and the defendant had intercourse again. The defendant went through the prosecutrix's purse and took a book of matches on which her mother's and fiance's phone numbers were written. After about 15 minutes the defendant told her to put her clothes on. He took the blindfold off her outside and warned her to look at the ground as she walked home. The defendant followed her and then left the scene. The prosecutrix arrived home at 10:00 A.M., on January 18, 1969. She complained to her mother about the attack and her parents called the police.

Officer Edmond Stack of the Chicago Police Department, the other witness called by the State, testified that he saw the prosecutrix at approximately 11:10 A.M., at her home. She told him that she had been raped and described the offender. Officer Stack received a matchbook with a phone number in it from the defendant, but it was not inventoried and it is not known what happened to it.

Roosevelt Flournoy, Jr., the defendant, appeared as a witness in his own behalf and testified that he first saw the prosecutrix outside the

La Keeler Club. He had been drinking with two friends, but now was on his way to give money to his mother. He talked to the prosecutrix and she mentioned that she needed money. When they reached his mother's house the prosecutrix wanted to "go and get it over with." They entered the basement and she took her clothes off. He got sick and could not have intercourse. She got dressed and accepted five dollars. On a book of matches, the prosecutrix wrote two phone numbers at which she could be reached. She gave the matchbook to the defendant and he walked her home. the defendant gave the book of matches to Officer Stack.

The State introduced into evidence a statement of defendant's prior conviction for rape for the purpose of affecting the credibility of the defendant in the instant case.

The first contention raised by the defendant on appeal is that the State failed to prove the defendant guilty of rape beyond a reasonable doubt, because the testimony of the prosecutrix was inherently unbelievable, inconsistent and failed to account for over half the time spent with her alleged abductor.

■■ The testimony of the complaining witness was corroborated by her prompt complaint to her mother and to the police. Prompt complaint is competent to corroborate the testimony of the complaining witness. *People v. Symons* (1961), 23 Ill.2d 126, 177 N.E.2d 185; *People v. Jenkins* (1962), 24 Ill.2d 208, 181 N.E.2d 79.

In *People v. Scott* (1950), 407 Ill. 301, 95 N.E.2d 315, the prosecutrix was held for thirty-seven hours and admitted that she was alone in the apartment on one occasion. During her captivity she cooked meals, did the laundry and cleaned the apartment. There was a public phone available for her use which she ignored. The facts in this case are easily distinguishable from the facts of the instant case.

The complaining witness in the instant case testified that she tried to get away from the defendant when he fell asleep. She hit him with an iron rod and screamed.

■■ In *People v. Marose* (1968), 10 Ill.2d 340, 139 N.E.2d 735 the Supreme Court at page 342-343, stated: "The jury being waived, the question of the weight of the evidence was for the trial judge who heard and saw the witnesses and who was, therefore, in a much better position to determine which witness was worthy of belief than we would be from an examination of the record." The defendant's prior conviction for rape adversely affected the credibility of the testimony. The complaining witness's testimony was believable when it is taken into consideration that she was blindfolded throughout most of her captivity.

■■ The second contention raised by the defendant is that since the

prosecutrix did not make an outcry or attempt to escape, use physical force or make prompt complaint, the State failed to prove that the intercourse was without the consent of the prosecutrix. The prosecutrix was blindfolded by the defendant. Having been deprived of her sight, she was frightened, disorientated and defenseless. She did not have the opportunities to cry out for help which were present in the cases cited by the defendant.

In *People v. Williams* (1961), 23 Ill.2d 295, 178 N.E.2d 372 the defendant did not force his affections on the prosecutrix; rather she offered him her body. In *People v. Qualls* (1961), 21 Ill.2d 252, 171 N.E.2d 612, the prosecutrix was alone near a phone and the front door. The fact situations in the other cited cases also vary substantially from the present situation.

The prosecutrix testified as to her unsuccessful attempt to escape from the defendant. She attempted to escape from the basement, but the defendant caught her. She hit him with an iron rod and screamed, but the defendant prevailed and threatened to kill her.

■■ The prosecutrix stood five feet, two inches tall and weighed 95 lbs. The defendant stood five feet, eleven inches tall and weighed 175 lbs. The prosecutrix was blindfolded. Resistance is not necessary where one is so overcome by superior physical strength or paralyzed by fear that she would be powerless to resist her assailant. *People v. Jackson* (1968), 103 Ill.App.2d 209, 243 N.E.2d 551.

Finally, the defendant asserts that the prosecutrix did not make a prompt complaint. The prosecutrix was released at 10:00 A.M., and she promptly complained to her mother and her parents called the police. The police arrived at 11:10 A.M. The prosecutrix complained as soon as she reached the safety of her home.

■■ The third and final contention raised by the defendant is that he was denied due process of law when physical evidence which was material and favorable to the accused was destroyed by the police and was no longer available at trial.

The prosecutrix testified that she had a matchbook in her purse on which the phone numbers of her mother and fiance were written. She testified that the defendant took the matchbook from her purse. Even if the matchbook were produced, defendant has not shown how it could possibly affect the result in his case. There were no statements by the prosecution which misled the court as in *Trimble v. State of New Mexico* (1965), 75 N.M. 183, 402 P.2d 162. Therefore, even if the matchbook were produced, it would not contradict the prosecutrix's testimony. The materiality of the matchbook with the phone numbers was not demonstrated.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.