THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TOMMIE LEE SMITH, Defendant-Appellant.

(No. 57050;

First District (3rd Division)—June 21, 1973.

James J. Doherty, Public Defender, of Chicago, (Donald S. Honchell and Michael Weininger, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Robin Auld and Thomas White, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court: ·

A jury found the defendant, Tommie Smith, guilty of burglary and he was sentenced to the penitentiary for a term of three to eight years. He contends that he did not receive a fair trial and that an oral statement made by him while in custody should not have been received in evidence.

Smith was arrested by two Chicago police officers about 9:30 P.M. on the night of December 20, 1970. The officers received two radio reports that burglaries were in progress in the 1800 block of South Ridgeway Avenue, which was in the area they were patrolling. They spoke to residents at the addresses given in the reports and were given a description of a man who had attempted to break into one apartment. Upon returning to their squad car they received a third message of a burglary attempt on South Lawndale Avenue—less than a block away and across the alley from the first two addresses. They hurried into the alley and saw Smith running in their direction. They apprehended him and as

they did so he pulled a gun from his pocket; they threw him to the ground and handcuffed him. The gun proved to be a starter pistol which used blank cartridges. Smith answered the description they had just received; he was searched and a portable radio was recovered from under his jacket. He said the radio was his. It had the name "Vickie Parks" inscribed on the inside of the back cover. A subsequent investigation revealed that it had been stolen that night from her home, 1811 South Ridgeway.

The police officers, Frank Corcoran and Rochelle McClain testified at the defendant's trial. After Corcoran related the events of the night of December 20th and the details of the arrest, the prosecutor asked him about a conversation with the defendant at the police station:

"Q. What, if anything, did you say to the defendant?

A. I just kept asking where he got the radio.

Q. Did the defendant speak to you in response to questions being made by you and the other officers?

A. He told me, directly to me, that it was his own radio. He said it was his radio.

Q. Did he tell you his name, the defendant? Did he tell you his name?

A. Yes, sir, he did.

Q. What name did he tell you?

A. Tommie Lee Smith.

Q. Did he say anything else to you?

A. He said he had been smoking reefers and drinking wine.

Q. After he said that did he say anything else to you?

A. He said something to the effect, 'when I do a job I do it well.'

Q. Do you know what he meant by doing a job?

Defense Attorney: Object.

The Court: Sustained.

Prosecutor: How many jobs were mentioned?

A. At that time I think it was about 6 jobs.

Defense Attorney: Your Honor, I object.

The Court: Sustain the objection. Let's go on with it.

Q. What, if anything, did the defendant say after that?

A. I don't recall."

McClain was also questioned about talking to the defendant at the station:

"Q. Where did you see him?

A. In the squad room.

Q. Did you have any conversation with Mr. Tommie Lee Smith at that time?

A. Yes, sir, I did.

Q. What, if ánything, did you say to Mr. Smith?

A. I asked Mr. Smith if it was his radio.

Q. What, if anything, did he say?

A. He said it was his radio.

Q. Did he say anything else to you?

A. He said that he had pulled 4 jobs—

Defense Attorney: Your Honor, I object.

The Court: Sustain the objection.

Prosecutor: What if anything did you say to Mr. Scott [sic] after he indicated the radio was his?

A. I asked him what he was doing in the neighborhood.

Q. What, if anything, was said?

A. He said he was visiting friends.

Q. What, if anything, else did he say?

A. He said he just got out of jail, he was on probation.

Defense Attorney: Your Honor, I object.

The Court: Sustain the objection.

Defendant Attorney: Can I be heard?

The Court: Sustain the objection. The answer is stricken and the jury is instructed to disregard it."

The answers to the prosecutor's questions: "At that time I think it wâs about 6 jobs," "He said he had pulled 4 jobs" and "He said he just got out of jail, he was on probation" were extremely prejudicial. The answers were elicited by the prosecutor and wère responsive to his questions.

An unwritten rule of trial practice is not to ask a witness a question on direct examination unless you know what the answer will be, and its corollary is not to ask a question on cross-examination unless you are reasonably sure what the answer will be. The corollary is often not observed because of the eagerness of the cross-examiner or his willingness to gamble; but there is no excuse for violating the primary rule. We must assume that the prosecutor talked to his witnesses before he called them to the stand and that he anticipated the answers by his persistence in asking Officer Corcoran the repetitive questions: "Did he say anything else to you?" and "After he said that did he say anything else to you?" The prosecutor's intention to extract damaging testimony is disclosed by his asking Corcoran these follow-up questions: "Do you know what he meant by doing a job?" and "How many jobs were mentioned?"

Further confirmation of his purpose can be seen in his directing, despite the objections previously sustained by the court, identical questions to Officer McClain: "Did he say anything else to you?", "What,

if anything, was said?" and "What, if anything, else did he say?" If the prosecutor had been surprised by Corcoran's responses, he certainly was not by McClain's. The questions asked McClain were deliberate and the solicited responses could not have been unexpected.

■■ When prejudicial testimony has been heard by a jury the harm to a defendant cannot always be prevented by sustaining objections and cannot always be removed by striking it from the record and instructing the jury orally or in writing to disregard it. See: *People v. Gregory* (1961), 22 Ill.2d 601, 177 N.E.2d 120; *People v. Buckminster* (1916), 274 Ill. 435, 113 N.E. 713; *People v. Pitts* (1971), 1 Ill.App.3d 120, 273 N.E.2d 664.

■■ The cumulative damage to the defendant resulting from the prosecutor's probing questions and the replies forced out of the officers, was not cured by the court's rulings and cautionary instructions. The defendant's motion for a mistrial should have been granted. He did not receive a fair trial and, despite clear evidence of guilt, his conviction must be reversed and the cause remanded for a new trial.

In view of this conclusion, it is unnecessary to consider the defendant's second point or the motion made in oral argument to reduce his minimum sentence in accordance with section 1005—8—1c(3) of the Illinois Unified Code of Corrections.

Reversed and remanded with directions.

McNAMARA and McGLOON, JJ., concur.