THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNIE HENDON, Defendant-Appellant.

(No. 74-76; ▮▮▮▮▮▮▮▮▮▮

Third District—November 28, 1975.

746

STOUDER, J., dissenting.

James Geis, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James Christy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant, Johnnie Hendon, and his brother Raymond Hendon, were indicted for rape. Their cases were consolidated for trial by jury, where Raymond was acquitted and defendant was found guilty. He was sentenced to not less than 4 years nor more than 20 years in the Illinois State Penitentiary. Defendant appeals, contending that the evidence failed to prove that the intercourse was forcible and against the will of the prosecutrix. He also contends that there were improper inferences to a prior criminal record during the trial, and that a mistrial should have been granted due to prejudicial statements made by a prospective juror.

The prosecutrix, who was 18 at the time, testified as follows: On De-

cember 9, 1972, shortly before 7 p.m., she left her home in order to make a telephone call at a phone booth near her house. She had a date at 7 p.m. and was going to be picked up at her house at that time. She is quite nearsighted and was not wearing her glasses that evening. As she neared the booth she noticed a car was approaching on her side of the street. She saw the car stop outside the booth but could not recognize the occupants, due to her poor eyesight. The driver told her to come over to the car. When she was very near the car, she realized that she did not know the occupants. She identified Johnnie Hendon as the driver, who got out of the car. He told her his name was Willie Jackson and that they were police detectives looking for three or four girls who had been "messing around with black guys."

She stated that she was not one of those girls, told him she was going to call the police and ran into the phone booth. She then decided that she could escape and left the phone booth without calling the police. Defendant grabbed her by the coat and shoved her against the car. She was frightened and defendant told her to "shut up or else." Defendant then forced her into the car and said he was taking her down to where the police was parked. She kept telling defendant she was not one of the girls he was looking for and repeatedly asked to be let out. Defendant drove up to a house, parked and, holding her arm, took her down some steps into the cellar where three couches were pushed together. Before entering the house, she heard some women arguing inside the house.

She removed her clothes at defendant's demand, and defendant removed his. Defendant then forced her to perform several acts of sexual intercourse and oral sex. She tried to cry out at one point, but he told her to "shut up in a loud and vicious way." When defendant finished, another man whom she identified as Raymond Hendon, came into the room and also forced her to commit several acts of intercourse. Following this, she was told to dress, and then defendant took her out of the cellar and drove her to a street close to her house. She stated that throughout this ordeal she was "scared for my life," she was "scared to death" and "in shock," and that "I did what I was told because of my life, afraid of my life."

She testified that she informed her mother of the rape when she arrived home. She was taken to the hospital where she complained of a pain in the neck. She also stated that she had been a virgin prior to this incident. She stated that she was positive about her identification of Johnnie Hendon because she had been so close to him when they were at the phone booth. However, she readily admitted that she had had

difficulties in identifying Raymond Hendon, because of the fact that she did not see his face while in the car, and due to the darkness of the cellar room.

Scott Parnham testified that on December 9, 1972, he was to pick up the prosecutrix at 7 p.m. for a date. Apparently the date had been arranged by a third party. She was not at home when he arrived, and he then drove around looking for her. When he returned to her house about an hour and a half later, the prosecutrix was there. She complained that her stomach hurt and asked him to drive her to her sister's house. They were unable to find her sister at home and then drove to a restaurant where she was supposed to be working. During this half-hour period, the prosecutrix was crying intermittently. After failing to locate her sister, the prosecutrix told Parnham that she had been raped, and he called the police.

A police officer testified that he received a call at about 9:30 p.m. that evening to proceed to the address where the prosecutrix lived. When he arrived, the prosecutrix was sitting on a bed crying, and he drove her to the hospital. There was testimony by another police officer that, when viewing photographs, the prosecutrix's identification of defendant was absolute and positive, but that she had difficulty identifying Raymond Hendon.

A physician testified that he examined the prosecutrix that evening after she told him she had been raped and complained of neck injury. He stated that the vagina showed signs of recent sexual activity. There was also a small tear in the vagina wall and some blood, which, according to the physician, indicated that this was probably her first sexual experience. An x-ray of her neck showed no bone damage, but the physician said this did not rule out soft tissue damage.

Defendant testified that he had met the prosecutrix two weeks previously at a restaurant and talked with her and another girl for an hour and a half. He then met her around 12:30 p.m. on December 9, 1972, and made arrangements to pick her up that night at the phone booth to go to a movie. Instead of going to the movie, they went to his cellar apartment, listened to records and later had sexual intercourse. He stated that the prosecutrix willingly engaged in intercourse with him. On cross-examination, however, he could not remember the other girl's name at the restaurant or any details of the conversation. He also could not remember what movie they had planned to see. When pressed for further details regarding his testimony on direct examination, he stated "I can't remember, I can't hardly remember nothing."

Raymond Hendon denied any involvement in the incident. He stated on direct examination that on December 9, 1972, he and defendant went

to a repair shop at 11 a.m., then proceeded to a pool hall and remained there for about three hours. On cross-examination, however, he recanted his testimony, finally stating that maybe this had happened the day before.

Two of the more significant defense witnesses were relatives of defendant who testified that on the evening in question they were picked up by a car in which only defendant and the prosecutrix were riding. One witness stated that the prosecutrix was smiling and said hello and the other said she was not crying. They dropped the prosecutrix off and went to the house of defendant's sister.

Defendant contends that there is insufficient evidence to show nonconsensual intercourse, arguing that the prosecutrix did not resist, did not cry out and did not attempt to escape. He further points out the differences in his testimony from that of the prosecutrix.

The testimony that he gave the prosecutrix an assumed name of "Willie Jackson" and stated that he was a police detective is not consistent with his statement that the prosecutrix had agreed to go out with him and voluntarily engaged in acts of sexual intercourse.

■■ In order to sustain a rape conviction, the prosecution must show that the intercourse was by force and against the will of the victim. (Ill. Rev. Stat. 1973, ch. 38, § 11—1.) The uncorroborated testimony of a prosecutrix is sufficient to sustain a conviction for rape if her testimony is clear and convincing. (*People v. White*, 26 Ill.2d 199, 186 N.E.2d 351 (1962).) If her testimony is not of such character, it must be corroborated by other evidence. (*People v. Faulisi*, 25 Ill.2d 457, 185 N.E.2d 211 (1962).) There is no definite standards fixing the amount of force required to show nonconsensual intercourse, and each case must be considered on its own merits. Resistance is not necessary under circumstances where resistance would be futile or would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear. *People v. Smith*, 32 Ill.2d 88, 203 N.E.2d 879 (1965).

In the instant case, the testimony of the prosecutrix was clear and convincing. Her testimony on direct examination was straight forward and was unshaken after vigorous cross-examination by the two attorneys representing Johnnie and Raymond Hendon. She readily admitted her difficulty in identifying Raymond Hendon, but was positive in her identification of defendant. Indeed, as we read the record, it is the testimony of defendant, rather than the prosecutrix, which is often vague and uncertain, and is even contradicted by the testimony of his brother.

■■ The prosecutrix's testimony was also corroborated by other evidence. The testimony of Parnham confirmed her statement that she had a date with him for that evening. Furthermore, she told him of the rape

and the police were notified within a relatively short time. (*People v. Flournoy*, 1 Ill.App.3d 918, 275 N.E.2d 289 (1st Dist. 1971).) The fact that she did not complain to Parnham until it became apparent that she could not locate her sister is understandable, considering that Parnham was a relatively new acquaintance. The police officer further testified to the fact that she was crying and was upset when he arrived at her house. (*People v. Lee*, 96 Ill.App.2d 105, 238 N.E.2d 63 (1st Dist. 1968).) Thus, not only is the prosecutrix's testimony in this case sufficiently clear and convincing, but other evidence in the record serves to corroborate her testimony.

In arguing that there has been an insufficient showing that the intercourse was by force and against her will, defendant cites *People v. Qualls*, 21 Ill.2d 252, 171 N.E.2d 612 (1961), *People v. Keeney*, 10 Ill.App.3d 296, 293 N.E.2d 492 (3rd Dist. 1973), and similar cases. He also contends that the circumstances here do not show sufficient resistance on the part of the prosecutrix. Referring to her testimony, he questions why she did not complete her call to the police while in the booth, and argues that she had numerous opportunities to escape or cry out.

The cases cited by defendant are clearly distinguishable. In all those cases, the testimony of the prosecutrix lacked verisimilitude. For example, in *Keeney*, the alleged victim was living with the defendant, engaging in intercourse with several people, and frequently making unsubstantiated claims of being raped. In addition to the prosecutrix's testimony in that case being somewhat implausible, there was no corroboration of the material elements of the offense. Similarly in *Qualls*, the circumstances of the alleged offense, as related by the prosecutrix's own testimony, were too implausible to support a rape conviction.

In the instant case, prosecutrix testified that she was grabbed, shoved against the car, and then forced into a car with two men. She was driven to a strange house and taken to the cellar. She testified that she had been told to "shut up or else," and repeatedly stated that she feared for her life.

■■ We do not find defendant's argument that the prosecutrix could have tried to escape or could have cried out to be very persuasive. While these contentions, which were also advanced before the jury, are indeed relevant to the plausibility of her testimony, that testimony has to be considered in light of all the circumstances. Here we have an inexperienced 18 year old who was physically overpowered, put into a car with two men, and taken to a place unfamiliar to her. There is no requirement that a woman subject herself to possible serious physical harm when an attempt is made to rape her. (*People v. Murphy*, 124 Ill. App.2d 71, 260 N.E.2d 386 (1st Dist. 1970).) The question is whether

her resistance would be futile under the circumstances. (See *People v. Parks*, 28 Ill.App.3d 327, 328 N.E.2d 603 (5th Dist. 1975); *People v. Sims*, 5 Ill.App.3d 727, 283 N.E.2d 906 (1st Dist. 1972).) The fact that calm deliberation shows she should have completed the call to the police or perhaps jumped out of the moving car, while indicating that she may have acted improvidently, does not ipso facto render the intercourse consensual. Attempting to escape, to struggle or to cry out is not necessary where it would be useless or where the prosecutrix was restrained by fear of violence. *People v. Lilly*, 9 Ill.App.3d 46, 291 N.E.2d 207 (3rd Dist. 1972).

In contrast to defendant's contentions that she had opportunities to cry out or escape, the prosecutrix testified to a forcible abduction, vague threats and her great fear. There were corroborative witnesses for both sides. Under these circumstances, the case essentially became one of credibility.

In *People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288 (1973), our Supreme Court stated at page 57:

> "Courts of review have a special duty of carefully examining the evidence in rape cases. \* \* \* But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility and otherwise assess the evidence which was presented. \* \* \* A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused." 54 Ill.2d 51, 57-58.

■■ The determination of the question of whether the defendant or the prosecutrix told the truth is the primary function of the jury. Here it is apparent that the jury, in the discharge of that function, believed the prosecutrix and not the defendant. The jury, acting within the province committed to it, has passed upon the credibility of the witnesses and has determined the weight of the evidence. Unless this court can say, upon review of the entire record, that the verdict is manifestly contrary to the weight of the evidence, the verdict of the jury will not be disturbed. (*People v. Polak*, 360 Ill. 440, 196 N.E. 513 (1935).) This court has carefully examined the record and considered the testimony. We have found nothing implausible or unbelievable in the prosecutrix's testimony, and we believe her testimony was sufficient to establish that the intercourse was by force and against her will.

Defendant next contends that during the trial there were inferences of a prior record which resulted in a denial of a fair trial.

During the examination of Officer Rogers regarding the identification

of the house in which the incident occurred, the prosecutor asked him if he knew who resided at that address. The officer replied that he knew that the Hendon family resided there, and, in response to a further question, stated that he was acquainted with Johnnie and Raymond Hendon. Another officer, who testified regarding the photographic identification of the two defendants by the prosecutrix, stated that the photographs were obtained from the records division. Finally, on redirect examination, Detective Pointer stated that defendant was accompanied by his attorney when he surrendered himself at the police station.

It is fundamental that proof of prior arrests or prior criminal activity, unrelated to the charge in question, cannot be used against an accused. (*People v. Smith*, 12 Ill.App.3d 1037, 299 N.E.2d 489 (1st Dist. 1973).) This court has condemned the evidentiary use of "mug shots" where it appeared that the use of the picture was of little or no probative value, and the legends of prior arrests on the photos were clearly prejudicial. *People v. Hudson*, 7 Ill.App.3d 333, 287 N.E.2d 297 (3rd Dist. 1972); *People v. Hawkins*, 4 Ill.App.3d 471, 281 N.E.2d 72 (3rd Dist. 1972).

■■ In the instant case, testimony that Officer Rogers knew the two Hendon brothers was relevant to the State's case regarding the identification of the Hendons as residents of the house and also tended to corroborate the testimony of the prosecutrix. In addition, we do not see how testimony that the officer knew the Hendon family, knew that it was a large family and was acquainted with the two defendants, was so suggestive of a prior criminal record as to warrant a new trial. Furthermore, the statement that defendant was accompanied by his attorney was elicited on redirect examination after defendant's attorney had questioned the officer on cross-examination regarding the circumstances of defendant's arrest. This statement does not seem at all suggestive of a prior criminal record.

■■ The statement regarding the source of the photographs was relevant as foundation evidence for the identification made by the prosecutrix. We note from the record that the trial judge exercised great caution in this area. He did not permit the photos to be admitted into evidence and did not allow the testifying officer to use the photos while on the witness stand lest some of the jurors see that the photos were "mug shots." He also did not allow the prosecution to impeach defendant by prior convictions due to the inherent prejudice that would result in a trial of this nature. Therefore, on the basis of evidence before us, we do not find such prejudicial intimation of a prior criminal record that would, as a matter of law, require a new trial. (*People v. Wyatt*, 23 Ill.App.3d 587, 319 N.E.2d 575 (3rd Dist. 1974); *People v. Ogden*, 77 Ill.App.2d 312, 222 N.E.2d 329 (3rd Dist. 1966).

■■  Defendant also contends that a mistrial should have been granted because of certain remarks made by a prospective juror. It appears from the record that, on the first day of jury *voir dire*, a prospective juror stated that she had previously served on a grand jury. When asked if this would influence her ability to serve here, she stated that from her experience, rape cases were difficult to prove, and therefore, no one would complain of rape unless it was the truth.

The record indicates that the trial judge summarily dismissed this prospective juror. He also thoroughly admonished jurors already selected to disregard the statement and inquired whether anyone else had the same feelings. In his own words, he "* * * made it quite clear that anyone in that frame of mind was not a qualified juror, almost to the point of holding her in ridicule." The judge also gave the defense attorneys the opportunity to further question the jurors who had already been selected, stating that "* * * I can assure you that if you get any answers that indicate preconceptions or that that comment influenced any of the jurors, I will either reconsider this motion [for a mistrial] or I will strike them as a Court's disqualification * * *." The record thus indicates that the trial judge thoroughly considered this matter, and we do not believe that the court abused its discretion in denying the motion for mistrial. *People v. Chaffin*, 49 Ill.2d 356, 274 N.E.2d 68 (1971).

■■  Having reviewed the record in this case, we do not believe that prejudicial error was committed nor do we believe that there is a reasonable doubt of the guilt of the defendant. The verdict of the jury, therefore, will not be disturbed. The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I disagree with the majority's holding that there was no reasonable doubt the intercourse was performed forcibly and against the will of the prosecutrix. Assuming for the moment the validity of the rule of law enunciated by the majority, I will first set forth my reasons for believing the evidence is insufficient in light of this rule. The rule says the uncorroborated testimony of a prosecutrix is sufficient to sustain a conviction for rape if her testimony is clear and convincing (*People v. White*, 26 Ill.2d 199, 186 N.E.2d 351 (1962)) and, if her testimony is not of such character, it must be corroborated by other evidence (*People v. Faulisi*, 25 Ill.2d 457, 185 N.E.2d 211 (1962)).

It is not necessary here to reiterate all of the evidence but certain facts

must be emphasized. The prosecutrix had numerous opportunities to escape and cry out for help but failed to take advantage of any of them. She claims the two men in the car were strangers and yet instead of walking away she talked to them. Although she had a dime and was in the phone booth, allegedly to call the police, she did not call the police and even, according to her own testimony, went back outside the booth. There was a woman across the street and yet the prosecutrix made no attempt to cry out. She testified the car was a four-door car and the two men were in the front and although she was in the back alone, she apparently made no attempt to get out. When the car stopped in front of the house she made no attempt to run away or cry out. She testified she heard voices in the house and yet again she made no attempt to cry out or run. She undressed herself and for a couple of hours engaged in intercourse. Although she complained of a neck injury, an x-ray of her neck showed no bone damage, although this does not necessarily rule out soft tissue damage. A physician's testimony that her vagina showed signs of recent sexual activity and the existence of a small tear in the vagina wall and some blood is meaningless since defendant admits intercourse and asserts a consent defense.

The majority characterizes the prosecutrix' testimony as clear and convincing. Their attempt to diminish the significance of the acquittal of defendant's codefendant is based on the grounds that the prosecutrix was positive in her identification of defendant but readily admitted her difficulty in identifying the codefendant. The fact is in her testimony she did identify the codefendant as her attacker and the jury did not believe her. This is particularly significant here where defendant admitted intercourse with her and asserted a consent defense, whereas the codefendant denied having ever seen the prosecutrix and successfully asserted an alibi defense. Consequently, I am unable to understand how her testimony can be characterized as clear and convincing.

The majority also concludes there is corroborating evidence. They first cite the testimony of Scott Parnham to show he corroborated the prosecutrix' claim she had a date with him the evening of the alleged rape. I fail to see how such testimony corroborates the occurrence of the alleged rape. The majority then states the police were notified within a relatively short time and cites this as corroboration. They attempt to explain away the prosecutrix' lack of promptness in notifying Parnham by arguing that since he was a relatively new acquaintance of hers it was understandable she didn't complain to him until it was apparent she couldn't locate her sister. This relatively short time referred to by the majority consists of approximately a half hour and no cases are cited by them in which a complaint a half hour after complainant was with

her friend constitutes prompt complaint. The usual reason for admitting recent complaints as corroborating evidence is to repel any inference that because the victim did not complain, no rape had in fact transpired. Failure to complain immediately would not necessarily destroy the admissibility of such evidence but the further removed the complaint is from the opportunity to complain, the more likely it is the contrary inference that the activities were consensual rather than forceful is warranted.

Early in the majority opinion they state the prosecutrix informed her mother of the rape when she arrived home. Later in the opinion when they discuss the existence of corroborating evidence no mention is made of such evidence. They do mention she told Parnham of the rape. The fact is the mother never testified in the case and it seems to be conceded by the majority in the latter part of their opinion by their omission of any reference to a complaint to the mother, that no such complaint was ever made. The testimony of the police officer that the prosecutrix was crying and upset when he arrived at her house is also cited by the majority as corroborating evidence. This can be characterized as tenuous at best. I believe the evidence is insufficient to meet the test applied by the majority but feel it necessary to call attention to the validity of the rule.

In the instant case I consider the evidence as neither clear and convincing nor corroborating. *People v. White*, 26 Ill.2d 199, 186 N.E.2d 351 (1962), is cited for the rule that the testimony of a prosecutrix is sufficient to sustain a conviction for rape if her testimony is clear and convincing. *White* in turn cites *People v. Sciales*, 345 Ill. 118, 177 N.E. 689 (1931), *People v. Freeman*, 244 Ill. 590, 91 N.E. 708 (1910), and *People v. Andreanos*, 323 Ill. 34, 153 N.E. 707 (1926). Each of these cases recites the rule but seems to consider it as an abstract principle. It is worth noting that only in *Sciales* was the conviction affirmed. *Sciales* involved the statutory rape of a 15 year old where defendant denied the intercourse. Just prior to citing the rule, the court in *Sciales* states there was sufficient corroborating evidence to warrant the jury believing the prosecutrix rather than the defendant. In each of the other cases the conviction was reversed and in each opinion the court recited the rule.

In *People v. White*, 26 Ill.2d 199, 202, 186 N.E.2d 351 (1962), after reciting the rule the court in the same paragraph cited another case, *People v. Schiro*, 361 Ill. 117, 197 N.E. 535 (1935), for the rule " 'We have repeatedly held that where a conviction of rape, statutory or otherwise, depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecutrix should be corroborated by some other evidence, fact or circumstance in the case.' "

The two rules cited in White are not compatible. If the *Schiro* rule is followed it would make no difference if the prosecutrix' testimony was clear and convincing. In cases where the defendant denies the charge and the case depends upon the testimony of the prosecutrix, the *Schiro* rule would require corroboration. After citing these two inconsistent rules the *White* court reversed the conviction on the grounds of insufficiency of evidence. The recitation of the rule in *White*, as in the other cases, seems to be merely an abstract exercise with no applicability to the case at hand.

In *People v. Andreanos*, 323 Ill. 34, 153 N.E. 707 (1926), defendant was indicted for statutory rape and the court in reversing the conviction held it was reversible error to instruct the jury defendant could be convicted of the crime of rape on the uncorroborated testimony of the complaining witness provided the jury believes such evidence is clear and convincing and convinces them of defendant's guilt beyond all reasonable doubt. The court stated, "While conviction may be sustained on the testimony, alone, of the prosecuting witness if, when considered with all other facts and circumstances on the trial, it is shown to be convincing, it is reversible error in a case where the evidence is conflicting and more than one witness testifies for the People, to single out the testimony of one of such witnesses as the basis of a verdict of guilty." (323 Ill. 34, 36-37.) Although it is not mentioned by the court, it's obvious the instruction suggests two standards of proof, and the mention of a clear and convincing standard in a criminal case would seem to be contrary to the reasonable doubt standard.

In *People v. Freeman*, 244 Ill. 590, 91 N.E. 708 (1910), which seems to be one of the first Illinois cases to recite the rule, the court reversed a conviction for rape on the purported grounds the testimony of the prosecutrix was not clear and convincing and yet the court discussed the lack of evidence of immediate complaint to her mother. What the court was discussing, without calling it such, was the lack of corroborating evidence.

The rule that the testimony of the prosecutrix alone, if clear and convincing, is sufficient to support a conviction for rape has been cited numerous times as can readily be seen by even a cursory look at cases regarding rape. The problem is the rule cited has not actually been followed. The rule should be, and perhaps is, that the evidence must be clear and convincing *and* corroborated in order to satisfy the reasonable doubt standard, particularly in cases where the act of intercourse is admitted and the sole dispute is whether such act was by force or consent.

I submit the present cause should be reversed for insufficiency of the evidence.